## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF TEXAS
## DALLAS DIVISION

| | | |
|---|---|---|
| GREGORY ALAN SCOTT | § | |
| d/b/a THE SCOTT LAW FIRM, | § | |
| **Plaintiff,** | § | |
| | § | |
| v. | § | Civil Action No. 3:20-CV-2825-M-BH |
| | § | |
| SCOTT D. WOLLNEY, | § | |
| JOSEPH R. SHGRUE, | § | |
| PAUL A ROMANO, and | § | |
| ATLAS FINANCIAL HOLDINGS, INC., | § | |
| **Defendants.** | § | Referred to U.S. Magistrate Judge[1] |

## FINDINGS, CONCLUSIONS, AND RECOMMENDATION

Before the Court for recommendation are *Defendants' Scott D. Wollney, Joseph R. Shugrue and Paul A. Romano Motion to Dismiss Plaintiff's "Third Amended Petition,"* filed January 5, 2021 (doc. 43), and *Plaintiff's Motion for Leave to File 4th Amended Original Complaint & Suit on Sworn Account*, filed January 27, 2021 (doc. 51). Based on the relevant filings, evidence, and applicable law, the plaintiff's motion for leave to amend is **GRANTED**, the defendants' motion to dismiss for lack of personal jurisdiction should be **GRANTED**, and their alternative motion to dismiss for failure to state a claim should be **DENIED as moot**.

## I.    BACKGROUND

Gregory Alan Scott (Plaintiff) sues Atlas Financial Holdings, Inc. (Company), as well as President and Chief Executive Officer Scott D. Wollney (CEO), Vice President and Chief Financial Officer Paul A. Romano (CFO), and Chief Operating Officer Joseph R. Shugrue (COO) in their individual capacities (collectively Defendants), for alleged breach of contract, conversion,

---

[1]By standing order of reference dated November 11, 2020 (doc. 28), this case has been referred for full case management.

tortious interference with a contract, misrepresentation, negligence, and suit on sworn account. (doc. 36 at 3-9.)[2]

## A.   <u>Retention of Plaintiff</u>

According to the complaint, Company is incorporated in the Cayman Islands and has its principal executive offices in the State of Illinois, but it provided commercial vehicle insurance in Texas through its insurance companies and subsidiaries. (*Id.* at 3.) This resulted in lawsuits against Company, its insurance companies and subsidiaries, and its policy holders in Texas. (*Id.*) In 2014, COO, Company's Vice President of Claims (VP), and its Litigation Manager allegedly all traveled to Dallas, Texas, to meet with Plaintiff and to retain his services as an attorney. (*See id.* at 4.) At the meeting, COO and Plaintiff exchanged business cards and "engaged in a general discourse regarding [Company's] subsidiary's then-pending acquisition of Gateway Insurance Company (GIC) and the anticipated need for the defense of . . . insured in Texas." (*Id.*)[3]

Plaintiff alleges that COO entered into a verbal attorney-client contract with him for the benefit of Company at the direction of CEO at the meeting. (*Id.*) At that time, and in subsequent "'attorney retention' emails," COO and Company offered to hire him to represent Company and its insurance companies and subsidiaries, and he agreed to provide legal representation at a specified hourly rate plus reimbursement of costs. (*Id.*) In 90 lawsuits filed in Texas from 2014 through 2020, he "routinely forwarded detailed status reports to [Company] and its corporate officers confirming the acceptance of the lawsuit assignments[.]" (*Id.*) He "performed 100% of the

---

[2]Citations to the record refer to the CM/ECF system page number at the top of each page rather than the page numbers at the bottom of each filing.

[3]Plaintiff alleges that Company's subsidiaries, including GIC, act as its alter ego. (*Id.* at 6.)

legal services requested by [Company] through its representatives & [Defendants]," and Company paid the bills he submitted for his work. (*Id*. at 4-5.) Plaintiff claims that during the six years he performed legal work for Company, Defendants "confirmed in writing the existence of that contractual fee agreement that included written requests that the Plaintiff prepare 'Preliminary Litigation Budgets' for every Texas lawsuit." (*Id*. at 5.) In early 2020, Company and Defendants "began slow-paying & non-payment of the remaining attorney fee statements." (*Id.*) Plaintiff's efforts to obtain payment for those fees were unsuccessful. (*Id.*)

## B.    <u>Procedural History</u>

On August 11, 2020, Plaintiff filed suit against Company, CEO, and COO in the 160th Judicial District Court, in Dallas County, Texas. (*See* doc. 1-2 at 1-4.) CFO was later also named as a defendant in a second amended complaint. (docs. 1-3, 1-7.)

With Defendants' consent, Company removed this action to federal court on September 11, 2020, on the basis of diversity jurisdiction. (*See* doc. 1.) Defendants were served with process, and on November 25, 2020, they moved to dismiss Plaintiff's claims against them for lack of personal jurisdiction, and alternatively, for failure to state a claim. (docs. 22-24, 31.) After he filed a third amended complaint, Defendants again moved to dismiss Plaintiff's claims against them on January 5, 2021, for lack of personal jurisdiction and for failure to state a claim. (docs. 36, 43.) Plaintiff responded, and on January 27, 2021, he sought leave to file a fourth amended complaint. (docs. 48, 51.)

## C.    <u>Defendants' Involvement</u>

Plaintiff's third amended complaint alleges that CEO had direct responsibility for oversight of advertising, underwriting, the issuance of hundreds of insurance policies, and the handling of

thousands of claims in Texas, as well as overseeing at least 90 lawsuits in Texas with COO. (doc. 36 at 2.) CFO allegedly had direct responsibility for overseeing the receipt of insurance premiums for Texas policies, and managing the money from the pooling agreement between Company's subsidiaries to pay claims, vendors, and defense counsel. (*See id.* at 2, 8; 38 at 11.)

According to Defendants' evidence, since Company's incorporation in 2011, they have been residents and citizens of Illinois. (doc. 45 at 2, 6, 9.) Their offices are located in Illinois, and they have never hired any employees or agents in Texas. (*Id.* at 3, 7, 10.) They do not own or lease property in Texas, and they do not regularly travel to Texas for business or personal reasons. (*See id.* at 2-3, 6-7, 9-11.) COO has traveled to Texas only "a few times" for business conferences and to perform due diligence regarding a taxi company in Dallas. (*See id.* at 10.) Defendants have never personally entered into any contracts or agreements with a Texas resident; they never entered into, signed or executed any contract with Plaintiff or his law firm in their capacities as officers of Company, and they have never given any instruction to any person not to pay Plaintiff's invoices. (*See id.* at 3-4, 6-8, 10.) CEO and CFO have never personally met Plaintiff. (*Id.* at 4, 8.) COO did speak to Plaintiff, but his communications with him were "limited to a small amount of conference calls. . . [that] generally took place when [Plaintiff] was either preparing for a trial or actually on trial for a case against [GIC's] insured." (*Id.* at 10-11.) After receiving a letter from Plaintiff seeking payment for $285,000.000 in attorney's fees from Company, COO directed VP to communicate to him information regarding GIC's liquidation, which was being administered through the Illinois Department of Insurance, and to advise that he follow its directives and communications for vendors claiming entitlement to payment from GIC. (*See id.* at 11-12.)

Plaintiff's proposed fourth amended complaint reasserts his allegations that Defendants

4

have direct oversight over insurance policies and claims in Texas, that they retained him to defend Company in at least 90 Texas lawsuits, and that they refused to pay him for his legal services. (*See* doc. 51-1.) It also contains new allegations that CEO and COO had direct involvement in choosing him as a member of a panel of defense attorneys representing Company and all of its subsidiaries in Texas and in overseeing the payment of attorney fees billed by panel members, and that CFO managed/oversaw payments/settlements related to over 90 Texas lawsuits and payment of attorney's fees incurred by the panel, as well as payment of vendor invoices related to the lawsuits. (*Id.* at 2-5.) The proposed complaint alleges that the 2014 verbal contract was a preliminary verbal attorney-client agreement with COO, and that Defendants retained his law firm via email to provide legal services for new civil lawsuits filed in Texas. (*Id.* at 9.) It claims that COO's responsibilities included supervising Company's VP and Litigation Manager, hiring the defense panel, and managing/overseeing the civil lawsuits in Texas, including at least 90 lawsuits in Texas involving Company and its subsidiaries, and making payments to the attorneys on the panel. (*See id.* at 3-4.) Based on Defendants' alleged direction not to pay his fees for legal services, Plaintiff seeks to add claims against them for theft of services, unjust enrichment, intentional misrepresentation, and fraudulent inducement. (*See id.* at 16-18, 20.)

## II. MOTION FOR LEAVE TO AMEND

Plaintiff moves for leave to amend under Rule 15(a) to add new claims against Defendants based on "new information from other panel attorneys." (*See* docs. 51; 52 at 3.)

Under Rule 15(a), pleadings may be amended once as a matter of course before a responsive pleading is served, and thereafter by leave of court. *See* Fed. R. Civ. P. 15(a). The rule also provides that such leave "shall be freely given when justice so requires," but "it is by no means

automatic." *Wimm v. Jack Eckerd Corp.*, 3 F.3d 137, 139 (5th Cir. 1993) (citing *Addington v. Farmer's Elevator Mut. Ins. Co.*, 650 F.2d 663, 666 (5th Cir. 1981)). The decision to grant or deny leave is left to the sound discretion of the trial court. *Ashe v. Corley*, 992 F.2d 540, 542 (5th Cir. 1993). Leave to amend should not be denied unless there is a "substantial reason" to do so. *Jacobsen v. Osbourne*, 133 F.3d 315, 318 (5th Cir. 1998); *Jamieson v. Shaw*, 772 F.2d 1205, 1208 (5th Cir. 1985) (citations omitted). There is a substantial reason to deny leave if the proposed amendment would cause undue delay or prejudice to the non-movant, if it is motivated by bad faith or dilatory motives, if there have been repeated failures to cure deficiencies with prior amendment, or if the amendment is futile. *Foman v. Davis*, 371 U.S. 178, 182 (1962); *see also Martin's Herend Imports, Inc. v. Diamond & Gem Trading*, 195 F.3d 765, 770 (5th Cir. 1999).

## A.    <u>Futility</u>

Defendants first argue that Plaintiff's motion for leave should be denied as futile. (*See* doc. 55 at 11.)

In the context of Rule 15(a), the Fifth Circuit has interpreted futility to mean that "the amended complaint would fail to state a claim upon which relief could be granted," so courts must apply the same standard as under Rule 12(b)(6). *Stripling v. Jordan Prod. Co.*, 234 F.3d 863, 873 (5th Cir. 2000). Leave to amend does not need to be granted when the amended complaint would not defeat a motion to dismiss. *See id.* The issue of futility is better addressed "in the context of a Rule 12(b)(6) or Rule 56 motion, where the procedural safeguards are surer," however. *Smallwood v. Bank of Am.*, No. 3:11-CV-1283-D, 2011 WL 4941044, at *1 (N.D. Tex. Oct. 17, 2011); *see also McDade v. Wells Fargo Bank, N.A.*, No. H-10-3733, 2011 WL 4860023 at *4 (S.D. Tex. Oct. 13, 2011) (explaining that in the context of a motion for leave, futility means that "the amended

6

complaint would fail to state a claim upon which relief could be granted") (quoting *Stripling*, 234 F.3d at 873). In fact, it is the court's "almost unvarying practice when futility is raised [in response to a motion for leave to amend] to address the merits of the claim or defense in the context of a Rule 12(b)(6) or Rule 56 motion." *Poly-America, Inc. v. Serrott Int'l Inc.*, No. 3:00-CV-1457-D, 2002 WL 206454, at *4-5 (N.D. Tex. Feb. 7, 2002) (citation omitted).

Here, because Defendants have already moved to dismiss Plaintiff's claims for essentially the same reasons that they contend amendment would be futile, their arguments are best considered in the Rule 12(b) context.

**B.    Bad Faith**

Defendants next argue that Plaintiff's motion for leave should be denied on the basis of bad faith. (doc. 55 at 16.)

Here, Plaintiff alleges that he seeks to add new information he received from members of the defense panel. (doc. 52 at 3.) He claims that Defendants chose to conduct a multi-million-dollar insurance business in Texas, and they conducted activities in the forum state that invoked the benefits and provisions of Texas law. (doc. 51-1 at 6-7.) He seeks to add allegations that they had daily involvement in the operation of Company's business in Texas, including direct involvement in choosing him as a member of the defense panel and overseeing payment of attorney fees billed by panel members. (*Id.* at 2-5.) Based on the alleged new information, Plaintiff seeks to add new claims for theft of services, unjust enrichment, intentional misrepresentation, and fraudulent inducement. (*Id.* at 16-18, 20.)

There is no evidence in the record that Plaintiff knew of the alleged new information prior to filing his motion. His conduct does not amount to bad faith where he seeks to add new claims

7

based upon alleged new information. *See Carson v. Polley*, 689 F.2d 562, 583-84 (5th Cir. 1982) (finding that the district court abused its discretion by denying leave to amend to add negligent hiring and supervision claim because the plaintiff contended that he had discovered new facts supporting the claim after his prior amendment, and there was no evidence of record that he could have adequately framed his claim when he previously amended his complaint). Moreover, the proposed new claims do not alter the character of this case as to Defendants, or the type of damages that would be allowed. *Compare WRR Indus., Inc. v. Prologis*, No. CIV.A. 3:04-CV-2544, 2006 WL 1814126, at *5 (N.D. Tex. June 30, 2006) (finding that the plaintiff sought to amend its complaint in bad faith where the plaintiff had 18 months to consider and develop its damage theories, and the new claims would fundamentally alter the character of the case). The proposed amendment aims to address pleading deficiencies, and nothing in the record suggests bad faith or dilatory motive. *See Thomas v. Texas*, No. 3:17-CV-0348-N-BH, 2017 WL 11496979, at *2 (N.D. Tex. May 19, 2017); *compare Wimm*, 3 F.3d at 141-42 (bad faith motive may be inferred when the plaintiff was aware of the underlying facts at the outset of the action but delayed in bringing the claims).

The motion for leave to amend is **GRANTED.** The Clerk's Office shall file the proposed amended complaint attached to Plaintiff's motion.

### III.   MOTION TO DISMISS

Defendants first move to dismiss Plaintiff's claims against them under Federal Rule of Civil Procedure 12(b)(2) for lack of personal jurisdiction. (docs. 43, 44 at 7-8.)

The exercise of personal jurisdiction over a non-resident defendant is proper when: (1) the non-resident is subject to jurisdiction under the laws of the state in which the court sits; and (2) the

exercise of jurisdiction over the defendant comports with the due process requirements of the United States Constitution. *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 472–74 (1985); *Panda Brandywine Corp. v. Potomac Electric Power Co.*, 253 F.3d 865, 867 (5th Cir. 2001) (per curiam). A defendant is amenable to the personal jurisdiction of a federal court sitting in diversity to the same extent as a state court in the same forum. *Pedelahore v. Astropark, Inc.*, 745 F.2d 346, 347 (5th Cir. 1984); *see also* Fed. R. Civ. P. 4(e)(1), 4(h)(1). Because the Texas long-arm statute authorizes the exercise of personal jurisdiction to the extent allowed by the due process clause of the Fourteenth Amendment, only the federal due process inquiry need be addressed. *Latshaw v. Johnston*, 167 F.3d 208, 211 (5th Cir. 1999); Tex. Civ. Prac. & Rem. Code Ann. § 17.041 *et seq.* (West 2012). "Exercising personal jurisdiction over a nonresident defendant is compatible with due process when (1) that defendant has purposefully availed [itself] of the benefits and protections of the forum state by establishing minimum contacts with the forum state, and (2) the exercise of jurisdiction over that defendant does not offend traditional notions of fair play and substantial justice." *Panda Brandywine Corp.*, 253 F.3d at 867.

The "minimum contacts" prong of the analysis is satisfied when a defendant "purposefully avails itself of the privilege of conducting activities within the forum state, thus invoking the benefits and protections of its laws." *Hanson v. Denckla*, 357 U.S. 235, 253 (1958). The nonresident defendant's availment must be such that the defendant "should reasonably anticipate being haled into court" in the forum state. *World–Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 297 (1980). There are two types of minimum contacts: those giving rise to general jurisdiction and those giving rise to specific jurisdiction. *Clemens v. McNamee*, 615 F.3d 374, 378 (5th Cir. 2010), *cert. denied*, 131 S. Ct. 3091 (2011). General jurisdiction exists where the nonresident's

contacts with the forum state are unrelated to the cause of action but are "continuous and systematic." *Helicopteros Nacionales de Columbia, S.A. v. Hall*, 466 U.S. 408, 414 (1984); *Alpine View Co. Ltd. v. Atlas Copso AB*, 205 F.3d 208, 215 (5th Cir. 2000). Specific jurisdiction is appropriate where the nonresident has purposefully directed its activities at the forum state and the "litigation results from alleged injuries that arise out of or relate to those activities." *Alpine View Co. Ltd.*, 205 F.3d at 215 (quoting *Burger King Corp.*, 471 U.S. at 472) (quotations omitted). It is a claim-specific inquiry and requires less pervasive contacts with the forum state than general jurisdiction. *McFadin v. Gerber*, 587 F.3d 753, 759 (5th Cir. 2009). The plaintiff has the burden of establishing minimum contacts. *WNS, Inc. v. Farrow*, 884 F.2d 200, 203 (5th Cir. 1989).

Where, as here, no evidentiary hearing is conducted, the plaintiff need only make a *prima facie* showing in support of jurisdiction. *Central Freight Lines Inc. v. APA Transport Corp.*, 322 F.3d 376, 381 (5th Cir. 2003). The plaintiff's uncontroverted factual allegations in the complaint must be accepted as true, and all factual disputes contained in the parties' affidavits must be resolved in his favor. *Alpine View Co., Ltd.*, 205 F.3d at 215; *Bullion v. Gillespie*, 895 F.2d 213, 217 (5th Cir. 1990). Courts are not required "to credit conclusory allegations, even if uncontroverted," however. *Panda Brandywine Corp.*, 253 F.3d at 869.

## A.    <u>General Jurisdiction</u>

As noted, a court may assert general jurisdiction over a nonresident defendant when its contacts are substantial, continuous, and systematic. *Central Freight Lines Inc.*, 322 F.3d at 381 (citing *Helicopteros Nacionales de Colombia, S.A.*, 466 U.S. at 414). As reaffirmed by the Supreme Court, these contacts must be "so 'continuous and systematic' as to render [the defendant] essentially at home in the forum State." *Goodyear Dunlop Tires Operations, S.A. v. Brown*, 564

U.S. 915, 918 (2011). The Fifth Circuit has "consistently imposed the high standard set by the Supreme Court when ruling on general jurisdiction issues." *Johnston v. Multidata Systems Int'l. Corp.*, 523 F.3d 602, 610-11 (5th Cir. 2008). In determining whether general jurisdiction exists, courts do not examine each of a non-resident's contacts with the forum state in isolation from one another, but rather, "*in toto* to determine whether they constitute the kind of continuous and systematic contacts required to satisfy due process." *Holt Oil & Gas Corp. v. Harvey*, 801 F.2d 773, 779 (5th Cir. 1986).

### 1. CEO and CFO

Here, CEO and CFO present undisputed evidence that they are residents and citizens of Illinois who do not own, lease, or hold a security interest in any real or personal property in Texas, and they have not traveled to Texas for business purposes since Company's incorporation in 2011. (doc. 45 at 2-3, 6-7.) According to their evidence, they have never personally entered into any contracts or agreements with a Texas resident, opened or maintained any bank accounts in Texas, entered into, signed or executed any contract with Plaintiff or his law firm in their capacities as officers of Company, met Plaintiff or directed any communication to him, or given any instruction to any person not to pay his invoices. (*Id.* at 2-4, 6-8.) They aver that they have never personally issued any insurance policy in Texas. (*Id.* at 5, 8.)

Plaintiff responds that personal jurisdiction exists over CEO and CFO based on their alleged responsibility and oversight of insurance policies, paid premiums, and lawsuits related to insurance claims. (*See* doc. 38 at 5.) He alleges that because CEO was directly responsible for advertising decisions and was the supervisor/manager of both CFO and COO, he had the requisite contacts with Texas for personal jurisdiction. (*See id.* at 10-11.) He also claims that personal

jurisdiction exists over CFO because he was responsible for the pooling agreement between Company's subsidiaries. (*See id.*).

Because "engaging in commerce with residents of the forum state is not in and of itself the kind of activity that approximates physical presence within the state's borders," CEO and CFO's mere alleged oversight of insurance policies in Texas is insufficient to create general jurisdiction. *See Revell v. Lidov*, 317 F.3d 467, 471 n. 19 (5th Cir. 2002) (noting that even repeated contacts with the forum state may not constitute the requisite substantial, continuous and systematic contacts required for general jurisdiction "—in other words, while it may be doing business *with* Texas, it is not doing business *in* Texas.") (quoting *Bancroft & Masters, Inc. v. Augusta Nat. Inc.*, 223 F.3d 1082, 1086 (9th Cir. 2000), *holding modified by Yahoo! Inc. v. La Ligue Contre Le Racisme Et L'Antisemitisme*, 433 F.3d 1199 (9th Cir. 2006)). Nor is CEO's alleged direct responsibility for advertising decisions sufficient to establish a *prima facie* case of personal jurisdiction. *See Frank v. P N K (Lake Charles) L.L.C.*, 947 F.3d 331, 339 (5th Cir. 2020) (finding that the defendant's targeted advertising did not render it "at home" in Texas). Similarly, even if CFO was responsible for the pooling agreement between Company's subsidiaries, his responsibility for managing it does not constitute substantial activity in Texas sufficient to establish general jurisdiction over him in his individual capacity. *See Saktides v. Cooper*, 742 F. Supp. 382, 387 (W.D. Tex. 1990) (finding that the defendant did not have sufficient systematic and continuous contacts in his individual capacity to support a finding of general jurisdiction where his only relevant contacts with Texas were not for his personal benefit, but were for the benefit of his employer). Plaintiff fails to allege the extent, duration, or frequency of CFO's contact with Texas based on his alleged management of the pooling agreement; his vague and general

12

allegations are insufficient to establish general jurisdiction over him. *See Johnston*, 523 F.3d at 610 ("[V]ague and overgeneralized assertions that give no indication as to the extent, duration, or frequency of contacts are insufficient to support general jurisdiction.").

Even taking Plaintiff's allegations as true, they are insufficient to show that CEO and CFO's contacts with Texas "approximate physical presence." *Frank v. P N K (Lake Charles) L.L.C.*, 947 F.3d 331, 339 (5th Cir. 2020) ("[T]he affiliations with the forum state must approximate physical presence.") (citing *Turney v. Hyundai Constr. Equipment USA Inc.*, 577 F. App'x 659, 660 (9th Cir. 2014)). Because they do not own, lease, or hold a security interest in any real or personal property in Texas, or travel to Texas on a regular schedule, their minimal contacts with Texas cannot be found to be "continuous and systematic." *See Fairchild v. Barot*, 946 F. Supp. 2d 573, 578 (N.D. Tex. 2013) (finding that because the corporate officer, as an individual, did not own real property, maintain bank accounts, maintain a registered agent for service of process, pay taxes, conduct business, or maintain a mailing address, he did not have sufficient systematic and continuous contacts with Texas to establish general jurisdiction); *see also Christina v. Pitt*, No. 4:20-CV-00534-CAN, 2020 WL 6684889, at *7 (E.D. Tex. Nov. 12, 2020) (finding that the defendant did not have substantial continuous and systematic contacts with the state of Texas where he "averred under penalty of perjury that he d[id] not reside in Texas, d[id] not own real property in Texas, d[id] not pay property taxes in Texas, ha[d] never had any contact with [the] [p]laintiff, and ha[d] never requested nor received any payments from [the] [p]laintiff.").

Based on CEO and CFO's limited general contacts with Texas, Plaintiff fails to present a *prima facie* case of general jurisdiction. Their alleged contact, both in terms of quality and quantity, with Texas is not so substantial, continuous, and systematic that they are, in effect, "at home." *See*

13

*Alexander v. Greenwood Hall, Inc.*, No. 4:18-CV-04540, 2019 WL 2913953, at *9 (S.D. Tex. July 8, 2019) (the defendants' occasional business contact with entities in Texas was insufficient to establish general jurisdiction). Therefore, Plaintiff has failed to make a *prima facie* showing of general jurisdiction over them. *Goodyear Dunlop Tires Operations, S.A.*, 564 U.S. at 922

### 2. COO

COO provides evidence showing that he is a resident and citizen of Illinois, where his office is located, and he has never held any director or officer position in any corporation incorporated under the laws of the state of Texas, or hired any employees or agents in Texas. (doc. 45 at 9-10.) In 2014, he met with Plaintiff, VP, and Litigation Manager, for a breakfast meeting to generally discuss the then-pending acquisition of GIC and the anticipated need for the defense of insureds in Texas. (*Id*.) He avers that he never personally, or in his capacity as COO, entered into, signed or executed any contract with Plaintiff or his law firm. (*Id*. at 11-12.) His communication with Plaintiff was limited and "generally took place when [Plaintiff] was either preparing for trial, or actually on trial for a case against [GIC] insured." (*Id*. at 11.) When Plaintiff was retained to represent GIC's insured, COO participated in conference calls from Illinois when Plaintiff was preparing for trial, or actually in trial in those cases. (*See id*. at 11.) COO "has never given any instruction to any person not to pay [Plaintiff's] invoices," but he did tell VP to inform Plaintiff of GIC's liquidation and the Illinois Department of Insurance. (*Id*. at 11-12.)

Plaintiff has not disputed COO's evidence regarding his lack of contacts with Texas, and he makes no allegations that COO is "at home" in Texas. (*See* doc. 48.) As discussed, an out-of-state defendant meets general jurisdiction requirements when his "affiliations with the State are so continuous and systematic as to render it essentially at home in the forum State." *See Daimler AG*

*v. Bauman*, 571 U.S. 117, 119 (2014). Throughout his complaint, Plaintiff alleges that Defendants collectively entered into a contract for legal services, that they now refuse to pay him for those services, and that they managed or supervised insurance policies in Texas. (*See* doc. 36.) His general allegations regarding Defendants' contacts with Texas provides "no indication as to the extent, duration, or frequency of [COO's] contacts" individually, however. *Cunningham v. Upwell Health, LLC*, No. 419CV00894ALMCAN, 2020 WL 4723175, at *4 (E.D. Tex. July 21, 2020), *report and recommendation adopted*, No. 4:19-CV-894, 2020 WL 4698322 (E.D. Tex. Aug. 13, 2020) (finding that the court lacked general jurisdiction over the individual defendants because the plaintiff's allegations were largely overgeneralized, collective (as to all named defendants), and provided no indication of the extent, duration, or frequency of the individual defendants' contacts with the forum state).

COO's limited communication with Plaintiff related to the execution of the alleged attorney-client relationship is also insufficient to support general jurisdiction. *Goodyear Dunlop Tires Operations, S.A.*, 564 U.S. at 922; *see Linton v. Johnson*, No. 5-10-CV-00585 OG NN, 2011 WL 1743677, at *4 (W.D. Tex. May 5, 2011), *report and recommendation adopted*, No. SA-10-CA-585-OG, 2011 WL 13272450 (W.D. Tex. May 31, 2011) (finding that routine communications between out-of-state attorneys and their client did "not support general jurisdiction."); *Taylor v. Underwood*, No. 3:99-CV-2632-X, 2000 WL 123973, at *2 (N.D. Tex. Jan. 31, 2000) (same). "The mere existence of an attorney-client relationship in the forum state does not support the exercise of general jurisdiction." *See DGG Grp., LLC v. Lockhart Fine Foods, LLC*, No. 1:20-CV-00330-RP, 2021 WL 308946, at *4 (W.D. Tex. Jan. 29, 2021); *see also Cunningham*, 2020 WL 4723175, at *5 (the plaintiff's allegation that the individual defendants signed a contract in their

capacities as corporate officers/employees with a company which then engaged in telemarketing in Texas at their direction did not establish general jurisdiction).

Because Plaintiff has alleged no facts showing substantial, continuous, and systematic contacts by COO with Texas, he has failed to make a *prima facie* showing of general jurisdiction over him.[4]

## B.    <u>Specific Jurisdiction</u>

Defendants also argue that specific jurisdiction is lacking. (*See* doc. 44 at 18-21.)

As discussed, specific jurisdiction over a non-resident defendant exists when a plaintiff's claims against the defendant arise out of or relate to activities that the defendant purposefully directed at the forum state. *Burger King Corp.*, 471 U.S. at 472. Specific jurisdiction is a claim-specific inquiry and requires less pervasive contacts with the forum state than general jurisdiction. *McFadin*, 587 F.3d at 759 (5th Cir. 2009).

### *1. CEO and CFO*

Here, CEO and CFO provide affidavits averring that they have never hired any employees or agents in Texas, never entered into any contract in which either party was to perform the contract in whole or in part in Texas, and never personally met Plaintiff or had any communication with him. (*See* doc. 45 at 4, 7-8.) They also state that they have "never given any instruction to any person not to pay [Plaintiff's] invoices" and "did not have any communication with any employee,

---

4 Defendants also argue that Plaintiff's claims are subject to dismissal under the Fiduciary-Shield Doctrine. (doc. 44 at 21.) "Several [Texas] courts have held, however, that the fiduciary shield doctrine only applies to prevent general jurisdiction, and does not protect an officer from the exercise of specific personal jurisdiction as to intentional torts or fraudulent acts for which the officer may be held individually liable." *Hewlett-Packard Co. v. Byd:Sign, Inc.*, No. 6:05-CV-456, 2006 WL 2822151, at *6 (E.D. Tex. Sept. 28, 2006). Because Plaintiff alleges that Defendants committed intentional torts or fraudulent acts, the fiduciary-shield doctrine does not apply.

agent or representative of any of the companies comprising the Atlas Group of Companies regarding [Plaintiff's] invoices prior to [Company] being served with process in this matter." (*Id.* at 4, 8.)

Plaintiff generally alleges that CEO and CFO's actions relating to the insurance policies in Texas show that they had the minimum contacts to establish jurisdiction. (*See* doc. 38 at 9-10, 20.) He claims that he participated in lengthy conference calls with CEO and CFO regarding insurance claims and trials in Texas. Taking his allegations as true, lengthy conferences calls with CEO and CFO are insufficient to make a *prima facie* showing of specific jurisdiction. *See Holt Oil & Gas Corp. v. Harvey*, 801 F.2d at 778 (exchange of communications with forum state insufficient to establish specific jurisdiction) (citing *Patterson v. Dietze, Inc.*, 764 F.2d 1145, 1147 (5th Cir. 1985) (numerous telephone calls from the defendant to the forum state during the course of carrying out the contract was insufficient to support specific jurisdiction)); *see also Lonestar Livestock Equip. Co. Inc. v. S. Livestock Sys., LLC*, No. CIV.A. H:15-447, 2015 WL 3756501, at *4 (S.D. Tex. June 16, 2015) (finding that hundreds of phone calls, texts, and emails were insufficient to establish specific jurisdiction).

Plaintiff's conclusory allegation that CEO and CFO "breached the terms of the six-year long attorney/client contractual relationship by refusing to issue the subject attorney fee payments to [him]" is also insufficient to establish specific jurisdiction. *Panda Brandywine Corp.*, 253 F.3d at 869. Although his allegation that CEO and CFO oversaw Company's insurance policies in Texas is undisputed, his breach of the contract claim does not arise out of or result from CEO and CFO's alleged participation in conference calls or their alleged oversight/management of insurance policies in Texas. *See Pervasive Software Inc. v. Lexware GmbH & Co. KG*, 688 F.3d 214, 227

17

(5th Cir. 2012) (citing *Revell,* 317 F.3d at 472) ( "For specific jurisdiction we look only to the contact out of which the cause of action arises ....").

Moreover, Plaintiff's allegation that CEO directed COO to meet with him to retain his legal services is insufficient to establish specific jurisdiction. As noted, to establish specific jurisdiction, Plaintiff's cause of action should result from the defendant's forum-related contacts. *See Monkton Ins. Servs., Ltd. v. Ritter*, 768 F.3d 429, 433 (5th Cir. 2014) (citing *Seiferth v. Helicopteros Atuneros, Inc.,* 472 F.3d 266, 271 (5th Cir.2006)). The Fifth Circuit has "repeatedly held that the combination of mailing payments to the forum state, engaging in communications related to the execution and performance of the contract, and the existence of a contract between the nonresident defendant and a resident of the forum are insufficient to establish the minimum contacts necessary to support the exercise of specific personal jurisdiction over the nonresident defendant." *Freudensprung v. Offshore Tech. Servs., Inc.*, 379 F.3d 327, 344 (5th Cir. 2004); *Holt Oil & Gas Corp.*, 801 F.2d at 778 ("[T]he exchange of communications between Texas and Oklahoma in the course of developing and carrying out the contract was in itself also insufficient to constitute purposeful availment of the benefits and protections of Texas law.")

Because Plaintiff fails to plead sufficient facts to show that CEO and CFO purposefully availed themselves to the benefits and protections of Texas law, he fails to make a *prima facie* showing of specific jurisdiction over CEO and CFO.

### 2.    COO

COO presents undisputed evidence that he never personally entered into any contracts or agreements with a Texas resident, and his communications with Plaintiff were "limited to a small amount of conference calls. . . [that] generally took place when [Plaintiff] was either preparing for

18

a trial or actually on trial for a case against [GIC's] insured." (doc. 45 at 10-11.) He traveled to Texas "a few times" since Company's incorporation for business conferences and to perform due diligence regarding a taxi company in Dallas. (*See id.* at 10.) Although COO was also a recipient of emails to Plaintiff from Company's Litigation Manager and other employees, COO did not send any email communications directly to Plaintiff regarding his legal services. (doc. 15-3 at 2-3, 22, 35-36; 15-2 at 16, 52; 15-4 at 2, 25, 66, 75, 84.)[5] According to the evidence, he never personally entered into, signed, or executed any contract with Plaintiff or his law firm. (doc. 45 at 12.) COO avers that he has never instructed anyone not to pay Plaintiff's invoices, and that after he received a letter from Plaintiff seeking payment for $285,000.000 in attorney's fees from Company, he directed the VP of Claims to communicate to Plaintiff information regarding GIC's liquidation, which was being administered through the Illinois Department of Insurance, and to make him aware that he should follow its directives and communications. (*See id.* at 11-12.)

Plaintiff has not disputed COO's evidence regarding his lack of contacts with Texas; as noted, he responds that there is general and specific personal jurisdiction and that "all three [defendants] had requisite 'minimum contacts' with Texas." (doc. 48 at 1.) He relies on email communications with Company's employees in support of his contention that COO "confirmed in writing the existence of that contractual fee agreement." (doc. 15-3 at 35, 46; 15-4 at 1, 24, 65, 75, 98). The emails are from Litigation Manager and VP, however, not COO. Moreover, communications relating to the performance of a contract themselves are insufficient to establish personal jurisdiction. *See McFadin*, 587 F.3d at 760 ("We find that there is no personal jurisdiction

---

5 Plaintiff and Defendants incorporate by reference their summary judgment evidence. (*See* doc. 36 at 5, 7, 14, 18; 38 at 11, 14, 17; 44 at 12, 15, 21.)

over [the defendant] with respect to the contract claim. It is clearly established that 'merely contracting with a resident of the forum state does not establish minimum contacts.'"). Although it is undisputed that COO traveled to Texas to meet with Plaintiff and spoke with him on conference calls, these actions are insufficient to establish specific jurisdiction. *See Marathon Oil Co. v. Ruhrgas*, 182 F.3d 291, 295 (5th Cir. 1999) (holding that presence at three meetings in Texas along with correspondence and phone calls to Texas was insufficient to establish general or specific jurisdiction because the record was devoid of evidence that the defendant made false statements at the meetings or that the alleged tortious conduct was aimed at activities in Texas). Plaintiff fails to present evidence to show that COO entered into a contract with him for the benefit of Company, or that he refused to pay or interfered with payment of his invoices. *See Klinge v. KBL Assocs., LLC*, No. SA-20-CV-470-XR, 2020 WL 3415877, at *4 (W.D. Tex. June 19, 2020) (granting motion to dismiss for lack of personal jurisdiction where there was no allegation or evidence that the defendant hired the plaintiff or that the defendant paid the plaintiff at all, much less in Texas).

Although all factual disputes contained in the parties' affidavits must be resolved in Plaintiff's favor, his conclusory allegation that both general and specific jurisdiction exist is insufficient to support a finding of personal jurisdiction over COO. *See Int'l Truck & Engine Corp. v. Quintana*, 259 F. Supp. 2d 553, 557 (N.D. Tex. 2003) ("Allegations in plaintiff's complaint are taken as true except to the extent that they are contradicted by defendant's affidavits.").   He fails to make a *prima facie* showing of personal jurisdiction, and Defendants' motion to dismiss his claims against them for lack of personal jurisdiction should be granted.[6]

---

6 Because Defendants' motion should be granted for lack of personal jurisdiction, it is unnecessary to reach their

## IV.  RECOMMENDATION

Defendants' motion to dismiss for lack of personal jurisdiction should be **GRANTED**, their alternative motion to dismiss for failure to state a claim should be **DENIED as moot**, and all of Plaintiff's claims against them should be **DISMISSED without prejudice.**

**SO RECOMMENDED** on this 9th day of June, 2021.

IRMA CARRILLO RAMIREZ
UNITED STATES MAGISTRATE JUDGE

### INSTRUCTIONS FOR SERVICE AND
### NOTICE OF RIGHT TO APPEAL/OBJECT

A copy of these findings, conclusions and recommendation shall be served on all parties in the manner provided by law. Any party who objects to any part of these findings, conclusions and recommendation must file specific written objections within 14 days after being served with a copy *See* 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b). In order to be specific, an objection must identify the specific finding or recommendation to which objection is made, state the basis for the objection, and specify the place in the magistrate judge's findings, conclusions and recommendation where the disputed determination is found. An objection that merely incorporates by reference or refers to the briefing before the magistrate judge is not specific. Failure to file specific written objections will bar the aggrieved party from appealing the factual findings and legal conclusions of the magistrate judge that are accepted or adopted by the district court, except upon grounds of plain error. *See Douglass v. United Servs. Automobile Ass'n*, 79 F.3d 1415, 1417 (5th Cir. 1996).

IRMA CARRILLO RAMIREZ
UNITED STATES MAGISTRATE JUDGE

---

alternative motion under Rule 12(b)(6) for failure to state a claim. (*See* doc. 44 at 23.)