## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF TEXAS
## DALLAS DIVISION

| | | |
|---|---|---|
| GREGORY ALAN SCOTT | § | |
| d/b/a THE SCOTT LAW FIRM, | § | |
| **Plaintiff,** | § | |
| | § | |
| v. | § | **Civil Action No. 3:20-CV-2825-M-BH** |
| | § | |
| SCOTT D. WOLLNEY, | § | |
| JOSEPH R. SHUGRUE, | § | |
| PAUL A ROMANO, and | § | |
| ATLAS FINANCIAL HOLDINGS, INC., | § | |
| **Defendants.** | § | **Referred to U.S. Magistrate Judge**[1] |

### FINDINGS, CONCLUSIONS, AND RECOMMENDATION

Before the Court for recommendation are *Plaintiff's Motion for Partial Summary Judgment Against Defendant "Atlas Financial,"* filed October 19, 2020 (doc. 15), and *Atlas Financial Holdings, Inc's Motion for Summary Judgment*, filed March 26, 2021 (doc. 57). Based on the relevant filings, evidence, and applicable law, the plaintiff's motion for summary judgment should be **DENIED**, and the defendant's motion for summary judgment should be **GRANTED** in part and **DENIED** in part.

## I.   BACKGROUND

Gregory Alan Scott (Plaintiff) sues Atlas Financial Holdings, Inc. (Defendant), as well as its Chief Executive Officer (CEO), Chief Financial Officer (CFO), and Chief Operating Officer (COO) in their individual capacities (collectively Corporate Officers),[2] for breach of contract, theft of services, unjust enrichment, tortious interference with a contract, misrepresentation,

---

1 By order of dated November 12, 2020 (doc. 28), this case was referred for full case management, including the determination of non-dispositive motion and issuance of findings of fact and recommendations on dispositive motions.

2 Plaintiff's claims against Corporate Officers were dismissed for lack of personal jurisdiction on July 6, 2021. (*See* docs. 72, 100, 101.)

negligence, fraudulent inducement, and suit on sworn account. (doc. 73 at 9-21.)[3]

## A.    **Factual Background**

Defendant has never been an insurance company, nor ever been licensed to issue insurance policies in any jurisdiction. (doc. 25-2 at 2.) Its sole asset is the ownership of 100% stock in its subsidiary American Insurance Acquisition, Inc. (Subsidiary), which is not, and has never been an insurance company. (*See id.* at 3; doc. 59 at 3.) Subsidiary was the owner of American Service Insurance Company (ASIC) and Anchor Holdings Group, Inc. (Anchor), which in turn owned American Country Insurance Company (ACIC) and Global Liberty Insurance Company (Global Liberty), respectively. (*See id*.)

In 2009, ASIC and ACIC entered into a pooling agreement (ASI Pool), with the intent to combine the insurance businesses and consolidate the operations into a common platform with a common system and purpose. (*See* doc. 59-6 at 118-24.) ASIC employed the individuals who provided services to ASI Pool members, and the cost of the employees was allocated to the appropriate member. (*See* doc. 59-7 at 22-23.) Within the ASI Pool, claims adjusters were not assigned to specific companies, but worked for all members. (*See id.* at 23.) Per the ASI Pool, ASIC accepted proof of loss and notices, adjusted and paid all claims, vendors, and attorney's fees for ASI Pool members using shared funds, and allocated loss payments and loss allocation expenses to the companies on a proportionate share basis. (*See id*. at 27-28.) The ASI Pool also consolidated underwriting and customer service. (doc. 59-6 at 123-24.) ASI Pool members, along with Defendant, Subsidiary, Anchor, and Global Liberty, also comprised a group known as the

---

3  Citations to the record refer to the CM/ECF system page number at the top of each page rather than the page numbers at the bottom of each filing.

Atlas Group of Companies. (doc. 59-7 at 23.)

In 2014, COO, Litigation Manager, and the Vice President of Claims (VP), traveled to Dallas, Texas, to meet with Plaintiff, where they exchanged business cards and "engaged in a general discourse regarding [Defendant's] subsidiary's then-pending acquisition of Gateway [Insurance Company] (GIC) and the anticipated need for the defense of . . . insureds in Texas," for insurance policies underwritten by GIC. (*See* docs. 15-2 at 1; 59 at 3-4.) No specific claims were discussed during the meeting. (doc. 59 at 4.)

Upon Defendant's acquisition of GIC, the ASI Pool was amended to add it as a member. (doc. 59-7 at 15, 34.) ASI Pool was generally used to reference the three member companies in financial filings, public conference calls, and marketing and agency communications. (*Id*. at 23.) ASI Pool members did not compete for an applicant's business.   (*Id*. at 25.)   They utilized the same form, terms and conditions, and the policy language for each of the ASI Pool members was "virtually identical." (*Id*.)

Following GIC's acquisition, Plaintiff became part of a panel of attorneys approved to represent policyholders and insureds for suits filed in Texas against it. (*See* docs. 25-2 at 3; 59 at 4.) As a member of the defense panel, Plaintiff received the Atlas Financial Defense Billing Guidelines that set out the policies and procedures for submission of invoices by counsel. (doc. 15-2 at 2.) Counsel were required to electronically submit their invoices through Defendant's billing platform, Legal-X. (*See* docs. 15-2 at 2-3; 15-3 at 2, 35, 46; 15-4 at 1, 24, 65, 75, 99, 15-5 at 2, 38, 53, 82, 91, 99, 105; 15-6 at 21, 28, 35, 42; 25-4.) According to the billing guidelines, invoices were subject to review for compliance with the billing guidelines, and compensation rates were not effective until they were approved in Legal-X by Defendant. (doc. 15-2 at 2-3.) The

3

billing guidelines also required that when submitting invoices, counsel select the appropriate insurer from a "drop-down menu," as well as the product line, input the claimant name, firm, case type, and case category. (docs. 15-2 at 2-6; 59-6 at 74-77.) Plaintiff's enrollment into Defendant's billing program, as well as his hourly rate, were approved in Legal-X. (*See* doc. 59-6 at 84-85.)

As a matter of course, when a Texas lawsuit was filed against an insured, a policyholder of an insurer like GIC, or the insurer directly, the litigation manager (Litigation Manager) would decide which attorney on the defense panel would be retained to defend that lawsuit, and then email the attorney and the adjuster assigned to the claim to confirm retention of that attorney for that case. (doc. 59 at 4.) From 2014 through 2020, Plaintiff was retained on 90 separate occasions to defend civil lawsuits in Texas, including a lawsuit against Defendant in the district court of Dallas County, Texas. (*See* docs. 15-2 at 2-3, 16, 51; 15-3 at 2, 9, 22, 35, 46; 15-4 at 1, 9, 24, 46, 65, 75, 87, 98; 15-5 at 2, 12, 21, 30, 38, 47, 53, 61, 70, 82, 91, 99, 105; 15-6 at 7, 21, 28, 35, 42, 47, 63, 85; 59 at 7-49; 59-9 at 67.) The assignment emails specifically requested an initial defense assignment acknowledgement, as well as a proposed litigation budget for defense of insureds in Texas to be completed and returned within 30 days. (*See* docs. 15-2 at 51; 15-3 at 2, 35, 46; 15-4 at 1, 24, 46, 65, 75, 87, 98; 15-5 at 2, 21, 38, 53, 82, 91, 99, 105; 15-6 at 7, 15-16, 21, 28, 42, 47, 63, 85; 59-9 at 44, 47-48, 51-52, 55, 57, 60; 65 at 16.) One email states that assignment of the case to Plaintiff was "subject to service." (doc. 15-2 at 16.) No payments were to be made to Plaintiff unless a litigation budget was received, and all budget issues and claims questions were to be directed to Litigation Manager. (doc. 65 at 14, 17.) Upon receipt of the assigned claim file, Plaintiff sent signed letters to claims adjusters acknowledging receipt of the file and confirming that a letter of introduction had been mailed to the insured. (*See* doc. 65 at 5-52.) Plaintiff's letters of

4

introduction indicated that he had been retained by "Atlas Financial" to defend the insured's interest in the pending lawsuit in Texas. (*See* 65-2 at 1-68.) When retained, Plaintiff was copied on letters sent to insureds informing them of his retention by GIC or ACIC, to defend them in their cases. (*See* docs. 15-4 at 9; 59 at 7-49, 51-59.) He routinely provided status reports for these suits to claims adjusters and Litigation Manager, participated in conference calls, and submitted invoices referencing GIC or ACIC claim numbers. (*See* docs. 15-2 at 10-15, 17-36, 53-58; 15-3 at 4-8, 11-21, 24-34, 37-45, 48-55; 15-4 at 11-21, 26, 32-43, 48-64, 67-86, 89-97, 100-104; 15-5 at 4, 13-14, 23, 31-32, 40-41, 48-49, 55-56, 62-63, 71-72, 84, 92-93, 100; 15-6 at 1, 9-10, 17-18, 23-24, 30-31, 37-38, 44-45, 48-49, 52, 56, 65, 86-87.) The invoices also included an invoice number that began with "AF," a designation for "Atlas Financial." (*See id*.; doc. 15 at 5.)

Plaintiff submitted invoices for each of the 90 matters, and he negotiated payment with claims professionals when payments were denied or partially denied for failure to adhere to the billing guidelines. (*See* docs. 15-2 at 11, 18, 37-50, 54; 15-3 at 5, 12, 25, 38; 15-4 at 4-8,50- 65, 74; 15-5 at 5, 14, 32, 41, 49, 56, 63, 72, 93; 15-6 at 1, 10, 18, 24, 31, 38, 45, 49, 52, 56, 87.) His invoices noted that he reviewed emails assigning the defense of new lawsuits, created preliminary budgets for those suits, and prepared file acknowledgment forms and letters. (*See* docs. 15-2 at 11, 22-23, 29; 15-3 at 4-5, 20, 24-25, 38, 48; 15-4 at 9-12, 26-28, 31-33, 67-68, 76-77, 88, 90, 99-101; 15-5 at 4-5, 13-14, 23, 31-33, 40-41, 48-49, 55-56, 62-64, 71-72, 76, 84, 86, 92-93, 100, 107; 59-2 at 1-2, 5-36, 40-45, 49-52, 56-65, 6-78, 82-89, 93-99; 59-3 at 8-40.) For each of the 90 matters for which Plaintiff was retained, he was paid by check containing the insurer's name, i.e., GIC, ACIC, or Global Liberty. (docs. 25-2 at 4; 59-7 at 39-56.) Plaintiff accepted the checks, and at no time objected to being paid by the insurer rather than by Defendant. (doc. 59 at 5.)

On June 11, 2020, GIC was declared insolvent and placed into liquidation by the Circuit Court of Cook County, Illinois. (*See* doc. 25-5.) The following day, the Office of the Special Deputy Receiver (the Receiver) issued a notice to GIC's defense counsel informing them of the state court's liquidation order, where they could obtain a copy of the order, as well as informing them that their retention by GIC had concluded as of the date of the liquidation order. (*See* docs. 59 at 69; 25-7 at 2.) The state court's liquidation order also "activated the statutory protection" of the state's Guaranty Fund or Association, which would determine whether the claim or claims being defended by the vendors were "covered claims" as defined by statute, and a representative from the Guaranty Fund would contact them to discuss their handling of the claims. (*See id.*) A separate email was sent to undisclosed recipients from a litigation analyst, advising them that the Receiver would address any unpaid expenses billed to GIC from October 16, 2019 through June 10, 2020. (docs. 59 at 70; 25-7 at 3.) Those seeking payment for unpaid expenses billed to GIC within that timeframe were directed to mail itemized invoices to the Receiver. (*Id.*) For unpaid expenses prior to October 16, 2019, a claim was to be filed in GIC's liquidation proceedings. (*Id.*) According to Defendant, Plaintiff did not submit invoices for payment as required by the procedures established by the Receiver following GIC's liquidation. (*See* doc. 25 at 18-19.)

On August 3, 2020, Plaintiff sent a letter, as well as up-to-date billing statements, via email to CEO, CFO, COO, and Litigation Manager, seeking payment for $285,000.00 in unpaid legal fees. (*See* doc. 15-6 at 105-107.) It stated that Plaintiff entered into an agreement for services with Defendant and not GIC, and it was therefore contractually responsible for payment. (*See id.*) Upon receipt of Plaintiff's letter seeking payment for unpaid legal fees, COO directed VP to communicate to Plaintiff that "he should comply with the directives and communications set forth

6

in the correspondence sent on behalf of the Illinois Department of Insurance to all of the vendors claiming an entitlement to payment from [GIC]." (doc. 45 at 11-12.)

**B.    Procedural History**

On August 11, 2020, Plaintiff filed suit against Defendant, CEO, and COO in the 160th Judicial District Court, Dallas County, Texas. (*See* doc. 1-2 at 1-4.) CFO was later named as a defendant in Plaintiff's second amended petition. (docs. 1-3, 1-7.) The second amended petition asserted claims against Corporate Officers and Defendant for breach of contract and suit on sworn account under Texas Rule of Civil Procedure 185. (doc. 1-7 at 3-6.)

With Corporate Officers' consent, Defendant removed this action to federal court on September 11, 2020, on the basis of diversity jurisdiction. (*See* doc. 1.) After obtaining an extension of time to respond to Plaintiff's second amended petition, Defendant answered and asserted twelve affirmative defenses as well as a counterclaim for declaratory judgment. (*See* docs. 6, 10, 13.) On October 19, 2020, Plaintiff moved for partial summary judgment on his breach of contract claim against Defendant, arguing there is no genuine dispute as to any material fact that Defendant is contractually obligated to pay his attorney fees, and that the dollar amount of those fees is reasonable. (*See* doc. 15.) Defendant responded on November 9, 2020, and Plaintiff replied on November 30, 2020. (docs. 25, 35.)

On December 15, 2020, Plaintiff filed a third amended complaint, adding new common law tort claims against Corporate Officers and Defendant. (*See* doc. 36.) It abandoned the suit on sworn account claim under Rule 185 and asserted a common law claim on a sworn account. (*Id.* at 3-10.) It also included new factual allegations in support of his breach of contract and sworn account claims, including allegations of alter ego liability. (*Id.*)

On March 25, 2021, Defendant moved for summary judgment on Plaintiff's claims against it for breach of contract claim and suit on sworn account. (doc. 57.) Plaintiff responded on April 14, 2021, and Defendant replied on April 29, 2021. (docs. 62, 68.)

On June 9, 2021, Plaintiff was granted leave to file a fourth amended complaint that adds, among other things, factual allegations and tort claims. (docs. 72, 73.) On June 28, 2021, the parties jointly filed a status report, stating that the fourth amended complaint does not moot their pending motions for summary judgment because the claims addressed by their motions remain the same. (doc. 86.) Corporate Officers were dismissed from this action on July 6, 2021. (doc. 101.)

## II. EVIDENTIARY OBJECTIONS

Both sides object to the statements in each other's affidavits. (docs. 64 at 16-17; 68 at 5.)

### A.    **Plaintiff's Objections**

Plaintiff generally objects to the affidavit of COO on grounds that it is not based on personal knowledge, it fails to prove-up documents in "admissible form," it contains expert opinions, and it provides "conclusory statements." (doc. 64 at 16-17.)

Federal Rule of Evidence 103(a)(1) requires an objecting party to make specific objections detailing the specific evidence it wishes to strike and stating the specific grounds for striking it. *Tucker v. SAS Inst., Inc.*, 462 F. Supp. 2d 715, 722 (N.D. Tex. 2006) (citing *United States v. Avants*, 367 F.3d 433, 445 (5th Cir. 2004)). "[A] trial court judge must be fully apprised of the grounds of an objection." *Tucker*, 462 F. Supp. 2d at 722. Objections lacking specificity do not satisfy the requirements of Rule 103, and a loosely formulated and imprecise objection does not preserve error. *Id.* (citing *United States v. Polasek*, 162 F.3d 878, 883 (5th Cir. 1998)).

Although Plaintiff generally objects that COO's affidavit is inadmissible under the Federal

Rules of Evidence and should be stricken, he does not identify the specific statements or opinions in the affidavit that are conclusory, consist of legal conclusions, or are inadmissible hearsay. (doc. 64 at 16-17.) He also has not offered any argument as to why the exhibits to the affidavit are not properly authenticated or otherwise inadmissible, or cited any case law or Federal Rule of Evidence demonstrating that this evidence "cannot be presented in a form that would be admissible in evidence." *See* Fed. R. Civ. P. 56(c)(2). As noted, Rule 103(a)(1) requires an objection that details the specific evidence to be stricken and the specific grounds therefor. *See Tucker*, 462 F. Supp. 2d at 722 (noting that "[t]he court is not required to review large quanta of evidence to ferret out inadmissible statements"); *Gilmour v. Intertek USA, Inc.*, No. 3:16-CV-00266, 2018 WL 3059682, at *2 (S.D. Tex. May 30, 2018), *adopted by* 2018 WL 3055749 (S.D. Tex. Jun. 20, 2018) (quoting *Martinez v. Ford Motor Co.*, No. SA:14-CV-376-DAE, 2014 WL 6680521, at *2 (W.D. Tex. Nov. 25, 2014)) ("Because Gilmour has offered only 'a broad statement that ... [the] affidavit is conclusory,' the Court 'finds that [his] objection is not specific enough to pass muster under Federal Rule of Evidence 103(a)(1)(B).'"); *Shepherd v. Dallas Cty., Tex.*, No. CIV.A. 305CV1442-D, 2008 WL 656889, at *6 (N.D. Tex. Mar. 6, 2008) (N.D. Tex. Mar. 6, 2008) (overruling objections because the movant failed to point to inadmissible components).

Because Plaintiff's generalized objections to the affidavit do not meet the specificity requirements of Rule 103(1)(a), they are overruled. *See, e.g., Hannon v. Kiwi Servs.*, No. 3:10-CV-1382-K-BH, 2011 WL 7052795, at *2 (N.D. Tex. Dec. 30, 2011), *adopted as modified by* 2012 WL 234650 (N.D. Tex. Jan. 24, 2012) (denying a motion to strike for lack of specificity); *Highpoint Risk Servs. LLC v. Companion Prop. & Cas. Ins. Co.*, No. 3:14-CV-3398-L(BH), 2016 WL 4479511, at *8 (N.D. Tex. Aug. 25, 2016) (same). Nevertheless, to the extent that the affidavit

contains conclusory allegations and legal conclusions, those statements will not be considered. *Salas v. Carpenter*, 980 F.2d 299, 304 (5th Cir. 1992) (holding that a court should not strike an entire affidavit when portions are inadmissible); *see also Williamson v. U.S. Dep't of Agric.*, 815 F.2d 368, 383 (5th Cir. 1987) (holding that a court should disregard the inadmissible portions of a challenged affidavit). Any portions of the affidavit that are clearly hearsay, clearly lack a basis of personal knowledge, or both, will also be disregarded. *Bellard v. Gautreaux*, 675 F.3d 454, 461 (5th Cir. 2012) (district court may *sua sponte* exclude evidence at summary judgment stage). Finally, any evidence that Defendant relies on that does not satisfy the admissibility requirements under the Federal Rules of Evidence will not be considered. *See Broadway v. City of Montgomery*, 530 F.2d 657, 661 (5th Cir. 1976) ("Evidence inadmissible at trial cannot be used to avoid summary judgment.").

**B.    <u>Defendant's Objections</u>**

Defendant objects to the statement in Plaintiff's affidavit that the insurers "were just paper shells", asserting that it is not based on upon personal knowledge. (doc. 68 at 5.)

A "declaration used to support or oppose a motion [for summary judgment] must be made on personal knowledge, set out facts that would be admissible in evidence, and show that the ... declarant is competent to testify on the matters stated." Fed. R. Civ. P. 56(c)(4). The Federal Rules of Evidence further require that a "witness may testify to a matter only if evidence is introduced sufficient to support a finding that the witness has personal knowledge of the matter." Fed. R. Evid. 602. Personal knowledge may be proved by a witness's or an affiant's own testimony, or reasonably inferred from his position or the nature of his participation in the matters to which he swears. *See id.*; *Am. Motorist Ins. Co. v. Southcrest Constr. Inc.*, No. 3:04-CV-2575-M, 2006 WL

995202, *9 (N.D. Tex. 2006) (citing *DIRECTV v. Budden*, 420 F.3d 521, 529-30 (5th Cir. 2005)).
It may include inferences and opinions so long as they are grounded in personal observation and
experience. *See United States v. Cantu*, 167 F.3d 198, 204 (5th Cir. 1999).

Here, Plaintiff's affidavit states that "to [his] knowledge" the insurers "were just paper
shells" because between 2014 and 2020, they did not have a website, an email address, a phone
number, a fax number, any employees, logo-embossed stationary, or a physical address. (doc. 64
at 18-19.) It is not clear on what information Plaintiff considered when asserting these conclusions,
however. Courts "have repeatedly held that an affidavit does not meet this requirement simply
because the affiant states that [his] conclusions are based on personal knowledge. Rather, the
affiant must provide the district court with sufficient information to allow the latter to conclude
that the affiant's assertions are indeed based on such knowledge." *Meadaa v. K.A.P. Enters.,
L.L.C.*, 756 F.3d 875, 881 (5th Cir. 2014). Because Plaintiff's affidavit does not establish that he
has the requisite personal knowledge to make this statement, Defendant's objection is sustained.

## III.   SUMMARY JUDGMENT STANDARD

Summary judgment is appropriate when the pleadings and evidence on file show that no
genuine issue exists as to any material fact and that the moving party is entitled to judgment as a
matter of law. Fed. R. Civ. P. 56(a). "[T]he substantive law will identify which facts are material."
*Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A genuine issue of material fact exists
"if the evidence is such that a reasonable jury could return a verdict for the non-moving party." *Id.*

The movant makes a showing that there is no genuine issue of material fact by informing
the court of the basis of its motion and by identifying the portions of the record that reveal there
are no genuine material fact issues. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). If it "bears

the burden of proof on an issue, either because [it] is the plaintiff or as a defendant [it] is asserting

an affirmative defense, [it] must establish beyond peradventure *all* of the essential elements of the

claim or defense to warrant judgment in [its] favor." *Fontenot v. Upjohn Co.*, 780 F.2d 1190, 1194

(5th Cir. 1986) (emphasis in original). The moving party can also meet its summary judgment

burden by "pointing out to the district court that there is an absence of evidence to support the

nonmoving party's case." *Celotex Corp.*, 477 U.S. at 325 (internal quotation omitted).   There is

"no genuine issue as to any material fact [where] a complete failure of proof concerning an

essential element of the nonmoving party's case necessarily renders all other facts immaterial." *Id.*

at 323.

Once the movant makes this showing, the non-movant must then direct the court's attention

to evidence in the record sufficient to establish that there is a genuine issue of material fact for

trial. *Id.* at 324.   It must go beyond its pleadings and designate specific facts to show there is a

genuine issue for trial. *Id.*; *Anderson*, 477 U.S. at 249.[4]   Rule 56 imposes no obligation for a court

"to sift through the record in search of evidence to support a party's opposition to summary

judgment." *Adams v. Travelers Indem. Co.*, 465 F.3d 156, 164 (5th Cir. 2006) (quoting *Ragas v.

Tenn. Gas Pipeline Co.*, 136 F.3d 455, 458 (5th Cir. 1998)). Parties must "identify specific

evidence in the record" supporting challenged claims and "articulate the precise manner in which

that evidence supports [those] claim[s]." *Ragas*, 136 F.3d at 458 (citing *Forsyth v. Barr*, 19 F.3d

1527, 1537 (5th Cir. 1994)).   While all of the evidence must be viewed in a light most favorable

---

4 "The parties may satisfy their respective burdens by 'citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations . . . admissions, interrogatory answers, or other materials.'" *Rooters v. State Farm Lloyds*, 428 F. App'x 441, 445 (5th Cir. 2011) (citing Fed. R. Civ. P. 56(c)(1)).

to the motion's opponent, *Anderson*, 477 U.S. at 255 (citing *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 158-59 (1970)), neither conclusory allegations nor unsubstantiated assertions satisfy the non-movant's summary judgment burden. *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994) (en banc); *Topalian v. Ehrman*, 954 F.2d 1125, 1131 (5th Cir. 1992).   Summary judgment in favor of the movant is proper if, after adequate time for discovery, the motion's opponent fails to establish the existence of an element essential to his case and as to which he will bear the burden of proof at trial. *Celotex*, 477 U.S. at 322-23.

## IV. BREACH OF CONTRACT

Both parties move for summary judgment on Plaintiff's breach of contract claim against Defendant. Plaintiff contends that the summary judgment evidence shows that Defendant breached a valid and enforceable contract and that his unpaid fees are reasonable. (*See* doc. 15 at 3.) Defendant responds that Plaintiff cannot bring forward evidence of each element of a valid contract, and that he cannot establish alter ego liability for the contractual obligations of the insurers. (*See* doc. 58.)

The essential elements of a breach of contract claim in Texas[5] are: (1) the existence of a valid contract; (2) performance or tendered performance by the plaintiff; (3) breach of the contract

---

5  "It is a long-recognized principle that federal courts sitting in diversity cases 'apply state substantive law and federal procedural law.'" *Shady Grove Orthodpedic Assoc., P.A., v. Allstate Ins. Co.*, 559 U.S. 393, 417 (2010) (quoting *Hanna v. Plumer*, 380 U.S. 460, 465 (1965)). Here, the alleged agreement was made in Texas, and it involves legal services rendered in the state of Texas. *See De Aguilar v. Boeing Co.*, 47 F.3d 1404, 1413 (5th Cir. 1995) (quoting *Duncan v. Cessna Aircraft Co.*, 665 S.W.2d 414, 421 (Tex. 1984)) ("[T]he law of the state with the most significant relationship to the particular substantive issue will be applied to resolve that issue."); *see also Faloona by Fredickson v. Hustler Magazine, Inc.*, 799 F.2d 1000, 1003 (5th Cir. 1986) (citing *Duncan*, 665 S.W.2d at 421) (contacts to take into account in determining the applicable law include the place of contracting and place of performance). Further, the parties appear to agree that Texas law governs the breach of contract claims, as they cite to Texas law and Fifth Circuit cases applying Texas law. (*See* docs. 15, 58.); *see also CIMC Vehicles Grp. Co. v. Direct Trailer, LP*, No. CIV.A. H-10-709, 2012 WL 4017985, at *9 (S.D. Tex. Aug. 24, 2012), *adopted by* 2012 WL 4018200 (S.D. Tex. Sept. 12, 2012) ("By uniformly relying on Texas law, the parties agree that it applies to their controversy. Absent any indication in the record that any other law should apply, the court applies Texas law.").

by the defendant; and (4) damages sustained by the plaintiff as a result of the defendant's breach. *Mullins v. TestAmerica, Inc.*, 564 F.3d 386, 418 (5th Cir. 2009) (citing *Aguiar v. Segal*, 167 S.W.3d 443, 450 (Tex. App.—Houston [14th Dist.] 2005, pet. denied)). "Under Texas law, a binding contract requires: '(1) an offer; (2) an acceptance in strict compliance with the terms of the offer; (3) a meeting of the minds; (4) each party's consent to the terms; and (5) execution and delivery of the contract with intent that it be mutual and binding.'" *Huckaba v. Ref-Chem, L.P.*, 892 F.3d 686, 689 (5th Cir. 2018) (quoting *In re Capco Energy, Inc.*, 669 F.3d 274, 279-80 (5th Cir. 2012)). "Whether a contract exists involves both questions of fact—such as the intent of the parties—and questions of law—such as whether the facts as found constitute a contract." *Merritt–Campbell, Inc. v. RxP Products, Inc.,* 164 F.3d 957, 961 (5th Cir. 1999) (citing *Zimmerman v. H.E. Butt Grocery Co.,* 932 F.2d 469, 471 (5th Cir. 1991)).

To be enforceable, the agreement "must address all of its essential and material terms with 'a reasonable degree of certainty and definiteness.'" *Fischer v. CTMI, L.L.C.*, 479 S.W.3d 231, 237 (Tex. 2016) (quoting *Pace Corp. v. Jackson*, 284 S.W.2d 340, 345 (Tex. 1955)). "Whether a contract contains all of the essential terms for it to be enforceable is a question of law." *Bandera County v. Hollingsworth*, 419 S.W.3d 639, 645 (Tex. App.—San Antonio 2013, no pet.). "The essential terms must be defined 'with sufficient precision to enable the court to determine the obligations of the parties.'" *Mack v. John L. Wortham & Son, L.P.*, 541 F. App'x 348, 362 (5th Cir. 2013) (quoting *New Process Steel, L.P. v. Sharp Freight Sys.*, No. 01-04-00764-CV, 2006 WL 947764, at *3 (Tex. App. —Houston [1st Dist.] Apr. 13, 2006, no pet.)). "What terms are 'material' to a contract should be determined on an agreement-by-agreement basis." *Inimitable Grp., L.P. v. Westwood Grp. Dev. II, Ltd.*, 264 S.W.3d 892, 899 (Tex. App.—Fort Worth 2008, no

pet.). "As a general matter, Texas courts have consistently held that a contract may be held void for indefiniteness if it fails to specify 'the time of performance, the price to be paid, the work to be done, the service to be rendered, or the property to be transferred.'" *Liberto v. D.F. Stauffer Biscuit Co., Inc.*, 441 F.3d 318, 324 (5th Cir. 2006) (quoting *Engelman Irrigation Dist. v. Shields Bros., Inc.*, 960 S.W.2d 343, 352 (Tex. App.—Corpus Christi 1997, pet. denied)). "Where an essential term is open for future negotiation, there is no binding contract." *T.O. Stanley Boot Co. v. Bank of El Paso*, 847 S.W.2d 218, 221 (Tex. 1992).

Further, "[t]he parties must have a 'meeting of the minds' and must communicate consent to the terms of the agreement." *Fan Expo, LLC v. Nat'l Football League*, 05-16-00763-CV, 2018 WL 1890144, at *6 (Tex. App.—Dallas Apr. 20, 2018, pet. denied). A "meeting of the minds" signifies the parties' "mutual understanding and assent to the agreement regarding the subject matter and the essential terms of the contract." *Bandera County v. Hollingsworth*, 419 S.W.3d 639, 645 (Tex. App.–San Antonio 2013, no pet.). "If evidence of the parties' mutual agreement consists of their conduct and course of dealing with one another, their mutual agreement may be inferred from the circumstances, in which case the contract is 'implied' as opposed to 'express.'" *Domingo v. Mitchell*, 257 S.W.3d 34, 40 (Tex. App.—Amarillo 2008, pet. denied) (citation omitted). "Ultimately, the determination of whether the parties had a meeting of the minds is objective and must be based on 'the meaning reasonably conveyed by what the parties said and did, and not on their subjective state of mind.'" *Grisham v. Bird*, 05-19-00400-CV, 2020 WL 1502774, at *4 (Tex. App.—Dallas Mar. 30, 2020, no pet.) (citation omitted).

A contract must also be based on valid consideration. *Smith v. Barnhart*, 576 S.W.3d 407, 420 (Tex. App.—Houston [1st Dist.] 2019, no pet.) (citing *Iacono v. Lyons*, 16 S.W.3d 92, 94

15

(Tex. App.—Houston [1st Dist.] 2000, no pet.)). Consideration is a bargained for exchange of promises that consists of benefits and detriments to the contracting parties. *Domingo*, 257 S.W.3d at 40 (citation omitted). "It is quite elementary that the promise of one party is a valid consideration for the promise of the other party." *Id*. (citation omitted). A contract that lacks consideration lacks mutuality of obligation and is unenforceable. *Id*.

## A.    Existence of Agreement

The existence of a valid contract is an "essential element[ ] in a breach of contract claim" under Texas law. *Bridgmon v. Array Sys. Corp.*, 325 F.3d 572, 577 (5th Cir. 2003) (citation omitted). As discussed, to show the existence of a contract, a plaintiff must establish, *inter alia*, an offer, "an acceptance in strict compliance with the terms of the offer," and a meeting of the minds. *Southern v. Goetting*, 353 S.W.3d 295, 299 (Tex. App.—El Paso 2011, reh'g denied). "In order to be legally binding, a contract must be sufficiently definite in its terms so that a court can understand what the promisor undertook." *T.O. Stanley Boot Co.*, 847 S.W.2d at 221.

Neither party disputes that COO, Litigation Manager, and VP met with Plaintiff in 2014 and had discussions regarding Plaintiff's legal experience and the anticipated need for legal representation in Texas litigation involving the insurers. It is undisputed that Plaintiff subsequently became a part of a panel of attorneys approved for insurance defense in Texas litigation, and that between 2014 and 2020, Plaintiff represented the insurers' policyholders and insureds in 90 lawsuits filed in Texas. The undisputed summary judgment evidence shows that emails from individuals with "atlas-fin.com" email addresses and with "Atlas Financial Holdings, Inc." in their signature blocks, were sent to Plaintiff retaining him for each lawsuit. It shows also that case status reports, billing invoices charging $200 per attorney hour and $75 per paralegal hour, and bill

analysis reports were submitted for each lawsuit in conformity with the "Atlas Financial Defense Billing Guidelines." It is undisputed that between 2014 and early 2020, Plaintiff was paid by check bearing the name of the insurers.

Plaintiff argues that the summary judgment evidence establishes that he entered into an "attorney-client contractual relationship" with Defendant. (doc. 15 at 3.) He provides his affidavit, which states in relevant part that when COO, VP, and Litigation Manager met with him in 2014, "'Atlas Financial' (not its subsidiaries) sought to hire [him] related to four different types of lawsuits in Texas," and "[t]he attendees left that in-person meeting with the mutual understanding that [he] was 'Atlas Financial's' new Trial lawyer in Texas, perhaps subject to final approval by 'Atlas Financial's' President . . . and/or 'Atlas Financial's' CFO." (doc. 64 at 22.). The assertions that Defendant "sought to hire" him, and that he was Defendant's trial lawyer in Texas "perhaps subject to final approval" by more senior executives, are not sufficiently definite, certain, or clear to show that he was actually hired, however.  Further, his assertation about what other attendees understood is speculative.  Even viewing these statements in the light most favorable to Plaintiff, however, there is no evidence to show that Defendant agreed to pay for his attorney fees. *See T.O. Stanley Boot Co.*, 847 S.W.2d at 221.  In Texas, "[a] contractual provision dealing with payment is always an essential element or a material term." *See G.D. Holdings, Inc. v. H.D.H. Land & Timber, L.P.*, 407 S.W.3d 856, 861 (Tex. App.—Tyler 2013, no pet.).  Plaintiff fails to identify evidence showing acceptance in strict compliance with the terms of an offer agreeing to pay his legal services for the benefit of the insurers. *See Southern*, 353 S.W.3d at 299. Because there is no competent evidence of a promise by Defendant to be offered in exchange for Plaintiff's legal services, he has also failed to show that the alleged contract is supported by consideration. *See*

17

*Pasant v. Jackson Nat. Life Ins. Co.*, 52 F.3d 94, 97 (5th Cir. 1995) ("It is well-settled in Texas that consideration may take the form of a benefit to the promissor or a detriment to the promisee."). When, as here, "an alleged agreement is so indefinite as to make it impossible for a court to 'fix' the legal obligations and liabilities of the parties, a court will not find an enforceable contract." *See Crisalli v. ARX Holding Corp.*, 177 F. App'x 417, 419 (5th Cir. 2006) (citation omitted). Plaintiff has not identified evidence of record that would allow a reasonable trier of fact to find that there was an offer, an acceptance, and a meeting of the minds between Plaintiff and Defendant. *See T.O. Stanley Boot Co., Inc.*, 847 S.W.2d at 221 (holding that there was legally insufficient evidence of a breach of contract when the evidence did not contain all of the material terms of the agreement).[6]

In his response to Defendant's motion for summary judgment, Plaintiff argues that his affidavits, the "90 lawsuit hiring/'offer' emails," his "lawsuit assignment 'acceptance' letters/emails," and his "attorney fee bills" all "establish the presence of a genuine dispute as to the existence of a *valid, written attorney-client contractual relationship* between" him and Defendant. (doc. 64 at 5 (emphasis original).) He points to his affidavit, but as discussed, it fails to raise a genuine issue of material fact as to whether there was an enforceable contract between him and Defendant.   The assertion that Defendant's top corporate officers agreed to retain him as the trial lawyer for first- and third-party lawsuits in Texas involving its affiliated insurance companies, and that it agreed to pay him for services rendered, is too indefinite to serve as the basis for the alleged contractual obligation. *See Melanson*, 2014 WL 4375715, at *7 (finding that

---

6 Plaintiff also moves for summary judgment on the reasonableness of his requested damages. (doc. 15 at 1.) Because he failed to show the existence of a valid contract, it is unnecessary to consider the other essential elements of his breach of contract claim.

a reasonable trier of fact could not find that based on the oral conversation between the plaintiff and the defendant that there was an offer, an acceptance, and a meeting of the minds because the conversation did not contain all essential terms to form a contract). Noticeably absent from his affidavit is any statement by the corporate executives agreeing that Defendant would be the party responsible for paying the legal services retained by the insurers. *See Homolka v. Clark*, No. CV H-09-151, 2010 WL 11468921, at *6 (S.D. Tex. May 11, 2010), *aff'd by* 416 F. App'x 408 (5th Cir. 2011) (holding summary judgment was warranted in favor of defendants as plaintiff "has not raised a genuine issue of material fact concerning the existence of a payment term"). Moreover, the fact that Defendant's corporate executives "sought to hire" Plaintiff for different types of lawsuits in Texas would not enable a reasonable trier of fact to find that Defendant entered into a contract with Plaintiff, whereby it agreed to pay for his attorney fees.

Plaintiff contends that the emails evince valid offers to retain him for each lawsuit, but the emails do not evidence any independent contractual undertaking by Defendant toward Plaintiff. *See BoRain Cap., LLC v. Hashmi*, 533 S.W.3d 32, 36 (Tex. App.—San Antonio 2017, pet. denied) (explaining that to prove that an offer was made, a plaintiff must show (1) the offeror intended to make an offer, (2) the terms of the offer were clear and definite, and (3) the offeror communicated the essential terms of the offer to the offeree) (citation omitted). The emails describe the facts of each lawsuit, identify the underlying insurance policy, designate Plaintiff as defense counsel, and state that a litigation budget must be completed and returned for review. (*See* doc. 15-2 at 16, 51; doc. 15-3 at 2, 35, 46; doc. 15-4 at 1, 24, 31, 46, 65, 75, 87, 98; doc. 15-5 at 2, 21, 38, 53, 82, 91, 99, 105; doc. 15-6 at 7, 15-16, 21, 28, 42, 47, 63, 85; 59-9 at 44, 47-48, 51-52, 55, 57, 60; 65 at 16.) None of the emails mention the 2014 meeting, nor do they identify the essential and material

19

terms of an agreement between him and Defendant. *See AMX Corp. v. Pilote Films*, No. CIV.A. 3:04-CV-2035-, 2007 WL 1695120, at \*16–17 (N.D. Tex. June 5, 2007), *aff'd on reconsideration in part by* 2007 WL 2254943 (N.D. Tex. Aug. 7, 2007) (concluding that defendant was entitled to summary judgment on the breach of contract claim after plaintiff failed to meet its burden of producing evidence of the essential terms of a contractual agreement).

Plaintiff argues that because the emails retaining him were from Defendant's employees, a factual dispute exists regarding the existence of an offer from Defendant. (doc. 64 at 5-6.) Even if the emails were from individuals employed by Defendant, this evidence objectively fails to show that the parties mutually understood and agreed to Defendant paying for his attorney fees. As discussed, Plaintiff fails to point to an email indicating that Defendant would be the entity responsible for paying his attorney fees and expenses. *See Tour De Force, Ltd. v. Barr*, 05-14-01430-CV, 2016 WL 1179417, at \*3 (Tex. App.—Dallas Mar. 28, 2016, no pet.) (finding that the plaintiff's emails did not show that he entered into a contract with the defendant individually, and his subjective belief that he was contracting with an individual rather than the corporation for which the individual worked did not negate his burden to prove a "meeting of the minds" between himself and the defendant to enter into a contract).

Plaintiff argues that the case status reports, his unpaid attorney fee bills, and the bill analysis reports that were submitted to Defendant for each lawsuit is evidence "clearly establishing" a meeting of the minds. (doc. 64 at 11.) The invoices and status reports show that Plaintiff performed work for GIC, invoiced his legal fees using a GIC claim number, and received payments from GIC, ACIC, and Global Liberty. (docs. 25-2 at 4; 59-7 at 39-56.) There are no statements or any indication in those documents that Defendant would be paying for his legal

services, however. Plaintiff also argues that a meeting of the minds occurred because Defendant compensated him for his legal services for the first six years, but he does not dispute the evidence that he was paid by check bearing the name of the insurers. (doc. 64 at 6.) He instead argues, without citing any legal authority, that the "method or source of fee payments to [him] is immaterial." (*Id.*) Taking all inferences in favor of the nonmovant, a trier of fact could not find that this evidence shows that there was a meeting of the minds between himself and Defendant, or an acceptance in strict compliance with the terms of a communicated offer. *See In re Capco Energy, Inc.*, 669 F.3d 274, 280 (5th Cir. 2012) (finding that the plaintiff's emails, invoices, and circumstances following the meeting between the plaintiff and the defendant's representative made no indication of an independent re-evaluation and was insufficient to show that the parties contracted for the defendant to provide an independent re-evaluation of the plaintiff's oil and gas properties).

Plaintiff finally argues that his affidavits and invoices "establish the presence of a genuine dispute as to whether [his legal representation] in 90 lawsuits over seven years constitute[ ] valid 'consideration' to support the existence of a written attorney-client contractual relationship." (doc. 64 at 12.) "It is well-settled in Texas that consideration may take the form of a benefit to the promissor or a detriment to the promisee." *See Pasant v. Jackson Nat. Life Ins. Co.*, 52 F.3d 94, 97 (5th Cir. 1995). As discussed, Plaintiff has not produced evidence of a statement by Defendant promising to pay his attorney fees. He has therefore failed to demonstrate that there is a genuine issue of material fact as to whether the alleged contract is supported by consideration, which is "an essential element of any valid contract." *Gilbert v. Fitz*, 05-16-00218-CV, 2016 WL 7384167, at *4 (Tex. App.—Dallas Dec. 21, 2016, no pet.) (citations omitted).

21

In summary, Plaintiff has not met his burden of identifying evidence of record sufficient to establish the existence of a valid contract between him and Defendant, and he has not raised any genuine issues of material fact with respect to the existence of a valid contract between him and Defendant. *See Unitech Energy Tools Ltd. v. Nabors Drilling Techs. USA, Inc.*, No. CV H-18-0852, 2020 WL 4227467, at *8 (S.D. Tex. July 23, 2020) (granting summary on breach of contract claim when "there is no summary judgment evidence suggesting that the parties came to a meeting of the minds whereby Canrig would reimburse Unitech for the new equipment it purchased if Canrig did not order enough Parts to justify that purchase"); *see also Searcy v. DDA, Inc.*, 201 S.W.3d 319, 323 (Tex. App.—Dallas 2006, no pet.) (affirming summary judgment dismissing breach of contract claim where there was "no evidence of any meeting of the minds on the material terms of the alleged contract such to indicate the legal obligations and liabilities of the parties").

## B.  **Alter Ego Liability**

In his fourth amended complaint, Plaintiff asserts that Defendant is liable for his unpaid attorney fees because at all times relevant to this lawsuit, ACI, GIC, Global Liberty, and ACIC acted as the alter egos of Defendant. (doc. 73 at 13.) He alleges that Defendant and the insurers had common directors or corporate officers, common business departments, pooled and comingled money, and combined daily operations. (*Id.*) He also alleges that Defendant "financed" the insurers and used their "money as its own." (*Id.*)

Parent corporations and subsidiary corporations are distinct and separate "persons" as a matter of law. *N. Cypress Med. Ctr. Operating Co. Ltd. v. Fedex Corp.*, 892 F. Supp. 2d 861, 865 (S.D. Tex. 2012) (citation omitted). "A bedrock principle of corporate law is that 'a parent corporation ... is not liable' for actions taken by its subsidiaries. *Bridas S.A.P.I.C. v. Gov't of*

*Turkmenistan*, 447 F.3d 411, 416 (5th Cir. 2006) (citing *United States v. Bestfoods*, 524 U.S. 51, 61 (1998)). In order to "hold a corporation liable for acts of its subsidiary or affiliate, a court must determine that some equitable doctrine is applicable to disregard the separate existence of the corporations." *Id.* at 865. One example is the alter ego doctrine, where a parent corporation will be liable for the actions of its affiliate or subsidiary "when the corporate form is used as a 'sham to perpetrate a fraud.'" *Pan Eastern Exploration Co. v. Hufo Oils*, 855 F.2d 1106, 1132 (5th Cir. 1988). "Generally, alter ego will not apply to disregard the corporate form absent exceptional circumstances." *Richard Nugent & CAO, Inc. v. Estate of Ellickson*, 543 S.W.3d 243, 266 (Tex. App.—Houston [14th Dist.] 2018, no pet.). "[T]he party seeking to ascribe one corporation's actions to another bears the burden of proof." *99869 Canada, Inc. v. Glob. Sec. Networks, Inc.*, No. CV H-16-2788, 2016 WL 6820394, at *4 (S.D. Tex. Nov. 17, 2016).

"Under Texas law, '[a]lter ego applies when there is such unity between corporation and individual that the separateness of the corporation has ceased and holding only the corporation liable would result in injustice.'" *SEC v. Res. Dev. Intl, LLC*, 487 F.3d 295, 302 (5th Cir. 2007) (quoting *Castleberry v. Branscum*, 721 S.W.2d 270, 272 (Tex. 1986)). The evaluation of alter ego status involves two considerations: "(1) the relationship between the entities, and (2) whether the entities' use of limited liability was illegitimate." *U.S. KingKing, LLC v. Precision Energy Services, Inc.*, 555 S.W.3d 200, 213 (Tex. App.—Houston [1st Dist.] 2018, no pet.). "Thus, to pierce the corporate veil and impose liability under an alter-ego theory, the plaintiff must demonstrate (1) that the entity on which it seeks to impose liability is the alter ego of the [liable entity], and (2) that the corporate fiction was used for an illegitimate purpose, that is, to perpetrate an actual fraud on the plaintiff for the defendant's direct personal benefit." *Id.* at 213-14.

23

The Texas Legislature has limited corporate veil piercing in cases involving contractual disputes. Under Section 21.223(a)(2) of the Texas Business Organizations Code, a shareholder is insulated "from a corporation's contractual or contractually related obligations 'on the basis that the holder ... is or was the alter ego of the corporation or on the basis of actual or constructive fraud, a sham to perpetrate a fraud, or other similar theory.'" *Belliveau v. Barco, Inc.*, 987 F.3d 122, 128 (5th Cir. 2021) (quoting Tex. Bus. Orgs. Code Ann. § 21.223(a)(2)). "The liability of a shareholder for a contractual corporate obligation limited by section 21.223 'is exclusive and preempts any other liability imposed for that obligation under common law or otherwise.'" *Sparks v. Booth*, 232 S.W.3d 853, 868 (Tex. App.—Dallas 2007, no pet.) (quoting Tex. Bus. Orgs. Code Ann. § 21.224). However, "the statutory limitation on a shareholder's liability … does not protect the shareholder if the obligee demonstrates the shareholder caused the corporation to be used for the purpose of perpetrating and did perpetrate an actual fraud on the obligee primarily for the direct personal benefit of the shareholder." *Penhollow Custom Homes, LLC v. Kim*, 320 S.W.3d 366, 372-73 (Tex. App.—El Paso 2010, no pet.) (citing Tex. Bus. Orgs. Code Ann. § 21.223(b)); *see Willis v. Donnelly*, 199 S.W.3d 262, 271-72 (Tex. 2006) (discussing the "narrowly prescribed ... circumstances under which a shareholder can be held liable for corporate debts"). "Thus, in a contract case, alter ego or other similar theories may be used to pierce the corporate veil only if (1) actual fraud is shown and (2) it was perpetrated primarily for the direct personal benefit of the corporation's holder." *Sparling v. Doyle*, No. EP-13-CV-00323-DCG, 2014 WL 12489990, at *5 (W.D. Tex. Oct. 23, 2014).

"In the veil-piercing context, Texas courts have held that 'actual fraud is not equivalent to the tort of fraud.'" *Belliveau v. Barco, Inc.*, 987 F.3d 122, 129 (5th Cir. 2021) (quoting *In re Ritz*,

832 F.3d 560, 566 (5th Cir. 2016)). "Rather, actual fraud involves dishonesty of purpose or intent to deceive and is characterized by deliberately misleading conduct." *Id.* (internal quotations and citations omitted). "Courts may deduce fraudulent intent from all of the facts and circumstances." *Spring Street Partners-IV, L.P. v. Lam*, 730 F.3d 427, 443 (5th Cir. 2013).

Defendant argues that there is no evidence to show that it and the insurers were alter egos of each other "designed to perpetuate a fraud on the world." (doc. 58 at 28.) By pointing out the need for, and lack of, evidence of actual fraud, it has met its summary judgment burden. *See Celotex*, 477 U.S. at 325.

The burden now shifts to Plaintiff to identify a genuine issue of material fact regarding whether Defendant used its subsidiaries to perpetrate an actual fraud on him for its direct benefit. Plaintiff has not pointed to evidence of record demonstrating that Defendant engaged in actual fraud sufficient to pierce the corporate veil and subject it to liability for any contract entered by the insurers. As explained, "[t]o pierce the corporate veil in contract claims, actual fraud must be proven." *W. Horizontal Drilling, Inc. v. Jonnet Energy Corp.*, 11 F.3d 65, 68 n.4 (5th Cir. 1994). There is no evidence that Defendant caused the insurers to be used for the purpose of perpetrating and did perpetrate an actual fraud on Plaintiff primarily for the direct personal benefit of Defendant. *See, e.g., Maxwell v. Neri N. Am.*, No. 4:13-CV-269, 2014 WL 2441200, at *5 (S.D. Tex. May 30, 2014) (dismissing breach of contract claim on summary judgment where plaintiff failed to present any evidence of actual fraud to support liability under the alter ego theory). As the non-movant, Plaintiff is "required to identify specific evidence in the record, and to articulate the 'precise manner' in which that evidence supported [his] claim." *ContiCommodity Servs. Inc., v. Ragan*, 63 F.3d 438, 441 (5th Cir. 1995).  By failing to counter with specific facts to show a

genuine dispute exists regarding actual fraud, Plaintiff has not met his burden to avoid summary judgment on Defendant's liability for breach of contract under the alter ego doctrine.

In conclusion, because the summary judgment evidence would not permit a reasonable trier of fact to find that there was an offer, an acceptance, and a meeting of the minds between him and Defendant regarding the essential terms of an enforceable contract, Plaintiff has failed to meet his burden, and his motion for partial summary judgment should be denied. Because Defendant has met its summary judgment burden to show a failure of proof regarding the existence of a contract, and as to the absence of its liability for the contractual obligations of the insurers, its motion on this claim should be granted.[7]

## V. SUIT ON SWORN ACCOUNT

Defendant argues that it is entitled to summary judgment on Plaintiff's suit on sworn account claim because it fails as a matter of law. (doc. 58 at 6.)

Plaintiff's fourth amended complaint alleges that he rendered legal services to the defendants, that the dollar amounts owed are "just" and are in accordance with the "six-year-long attorney/client contractual agreement" between him and the defendants, and that his attorney fees "are the usual, customary [and] reasonable charges for those legal services." (doc. 73 at 21.)

In Texas, a plaintiff can file a suit on a sworn account under Texas Rule of Civil Procedure 185 or as an independent common law action. "Rule 185 is not a rule of substantive law but is a rule of procedure with regard to evidence necessary to establish a prima facie right of recovery." *Rizk v. Fin. Guardian Ins. Agency, Inc.*, 584 S.W.2d 860, 863 (Tex. 1979). "Though Rule 185 is a

---

[7] Because it has been recommended that Defendant's motion for summary judgment on Plaintiff's contract claim be granted, it is unnecessary to consider its remaining argument regarding the statute of frauds.

procedural rule and does not apply under *Erie*, open accounts are a common law cause of action in Texas." *Sunshine Traders of El Paso, Inc. v. Dolgencorp, Inc.*, 219 F. App'x 375, 377 (5th Cir. 2007). Because the procedural requirements under Rule 185 generally incorporate the common law elements of a sworn account claim, Texas courts will look to Rule 185 and case law addressing Rule 185 claims when considering sworn account claims common law. *See Hollingsworth v. Nw. Nat. Ins. Co.*, 522 S.W.2d 242, 245 (Tex. Civ. App.—Texarkana 1975, no writ) (citing cases and noting that the explicit language of Rule 185 appears consistent with the traditional sworn account recognized at common law).

Under Texas law, the elements for a common law action on a sworn account are: "(1) there was a sale and delivery of the merchandise or performance of the services; (2) the amount of the account is just, that is, that the prices were charged in accordance with an agreement, or in the absence of an agreement, they are usual, customary, and reasonable prices for that merchandise or services; and (3) the amount is unpaid." *Noodlenet, LP v. Proctor & Gamble Distrib. LLC*, No. 3:08-CV-1121-K, 2008 WL 11349984, at *2 (N.D. Tex. Nov. 11, 2008) (citing *Adams v. H & H Meat Prods. Inc.*, 41 S.W.3d 762, 773 (Tex. App.—Corpus Christi 2001, no pet.). To recover under a sworn account, plaintiffs must prove "the contract, sale, or relationship from which they derive their right to recover the account." *Long v. Miken Oil, Inc.*, 12-13-00252-CV, 2014 WL 4104100, at *14 (Tex. App.—Tyler Aug. 20, 2014, no pet.). This is because "a suit on sworn account presupposes a contract or series of contracts which is performed by the one party who sues the other thereto for performance in turn of his obligations thereunder." *Dyche v. Simmons*, 264 S.W.2d 208, 214–15 (Tex. Civ. App.—Fort Worth 1954, writ ref'd n.r.e.); *see also Evans Advert. Agency, Inc. v. Morphew*, 525 S.W.2d 56, 58 (Tex. Civ. App.—Tyler 1975, no writ) ("A suit on a

sworn account under Rule 185 presupposes a contract performed by one party who sues the other party for performance of his obligations, but it does not apply to or cover transactions between parties who were strangers to the transaction.").

Defendant argues that Plaintiff's suit on sworn account claim "is wholly dependent upon . . . proving that there was a contract between himself and Atlas that was supported by consideration." (doc. 58 at 6.) It claims that because he cannot prove the existence of a contract in support of his breach of contract claim against it, his suit on sworn account claim also fails as a matter of law. (*Id.* at 6, 25, 28.) As discussed, "an action on sworn account presupposes a contract between the debtor and creditor." *Hollingsworth*, 522 S.W.2d at 245. Here, there is no competent evidence of an agreement between Plaintiff and Defendant that it would be paying him for legal services rendered for the insurers. Although Plaintiff provides invoices detailing his legal services and amounts owed and unpaid for those services, they objectively show that he provided those legal services for GIC, not Defendant. Because Defendant asserts that a suit on sworn account claim fails without a valid contract between the parties, and points out the absence of such a contract in this case, it has met its burden to show that there is no genuine issue of material fact with respect to Plaintiff's sworn account claim. *See Long v. Miken Oil, Inc.*, 12-13-00252-CV, 2014 WL 4104100, at *14 (Tex. App.—Tyler Aug. 20, 2014, no pet.) (holding that plaintiffs did not have a right to recover on a sworn account when there was no evidence of an implied or express contract); *Stone Co. v. Carminati*, 317 S.W.2d 78, 80 (Tex. Civ. App.—Fort Worth 1958, no writ) (affirming judgment on sworn account claim where none of the facts at trial established an implied promise to pay by appellee); *see also Harris v. Jackson & Walker, L.L.P.*, 05-93-01795-CV, 1995 WL 23008, at *4 (Tex. App.—Dallas Jan. 20, 1995, no writ) ("An individual defendant is not

liable on a sworn account as a matter of law when the invoices attached to the motion for summary judgment show only the corporate defendant as a party to a transaction.").

Because Plaintiff has failed to meet his burden to show a genuine issue of material fact on the existence of a contract between him and Defendant, he likewise has not met his burden of identifying evidence of record raising a genuine issue of material fact as to his suit on sworn account claim. Summary judgment should therefore be granted in Defendant's favor with respect to Plaintiff's sworn account claim. *See Cinco J., Inc. v. Pressure Trucks, Inc.*, No. SA-15-CV-214-XR, 2015 WL 1957108, at *7 (W.D. Tex. Apr. 29, 2015) (dismissing suit on sworn account claim where no facts are alleged that plaintiff "sold goods, services, wares, and merchandise" to defendant, or that defendant "is in any way connected to the unpaid account except through [its personal] guarantee").

## VI. COUNTERCLAIM FOR DECLARATORY JUDGMENT

Defendant argues that it is entitled to summary judgment on its counterclaim declaring that it is not obligated to pay Plaintiff's invoices. (doc. 58 at 7.)

The federal Declaratory Judgment Act (Act) provides that "[i]n a case of actual controversy within its jurisdiction, ... any court of the United States, upon the filing of an appropriate pleading, may declare the rights and other legal relations of any interested party seeking such declaration, whether or not further relief is or could be sought." 28 U.S.C. § 2201. The Act "does not create a substantive cause of action" and "is merely a vehicle that allows a party to obtain an early adjudication of an actual controversy arising under other substantive law." *Metropcs Wireless, Inc. v. Virgin Mobile USA, L.P.*, 3:08-CV-165-D, 2009 WL 3075205, at *19 (N.D. Tex. Sept. 25, 2009) (citations and quotations omitted). The Act is an authorization and not a command and allows

federal courts broad, but not unfettered, discretion to grant or refuse declaratory judgment. *Id.*

Here, Defendant asserts a counterclaim for a declaratory judgment that "Atlas is under no obligation to pay the fees and costs [Plaintiff] claims he is owed for his defense of Gateway insureds and policyholders." (doc. 13 at 23.) Defendant is not entitled to a consideration of the request, however, as the claim seeks resolution of issues that will be resolved as part of Plaintiff's other claims in the lawsuit, and is therefore redundant. *See Concise Oil & Gas P'ship v. Louisiana Intrastate Gas Corp.*, 986 F.2d 1463, 1471 (5th Cir. 1993) (declaratory judgment claim redundant of breach of contract claims has no "useful purpose"); *Am. Equip. Co. v. Turner Bros. Crane & Rigging, LLC*, No. 4:13-CV-2011, 2014 WL 3543720 (S.D. Tex. July 14, 2014) ("Courts in the Fifth Circuit regularly reject declaratory judgment claims seeking the resolution of issues that will be resolved as part of the claims in the lawsuit."); *see, e.g., Narvaez v. Wilshire Credit Corp.*, 757 F. Supp. 2d 621, 636 (N.D. Tex. 2010) (declining to consider the plaintiff's request for declaratory judgment and granting summary judgment on it where the request was redundant and duplicative of his breach of contract claim). Accordingly, Defendant's motion for summary judgment as to its declaratory judgment counterclaim should be denied.

## VII.   RECOMMENDATION

Plaintiff's motion for partial summary judgment on his breach of contract claim should be **DENIED**, Defendant's motion for summary judgment on his claims for breach of contract and suit on sworn account should be **GRANTED**, and Plaintiff's breach of contract and suit on sworn account claims should be **DISMISSED with prejudice**. Defendant's motion for summary judgment on its counterclaim for declaratory judgment should be **DENIED**.

**SO RECOMMENDED** on this 28th day of August, 2021.

_(signature)_
IRMA CARRILLO RAMIREZ
UNITED STATES MAGISTRATE JUDGE

## INSTRUCTIONS FOR SERVICE AND
## NOTICE OF RIGHT TO APPEAL/OBJECT

        A copy of these findings, conclusions and recommendation shall be served on all parties in the manner provided by law. Any party who objects to any part of these findings, conclusions and recommendation must file specific written objections within 14 days after being served with a copy _See_ 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b). In order to be specific, an objection must identify the specific finding or recommendation to which objection is made, state the basis for the objection, and specify the place in the magistrate judge's findings, conclusions and recommendation where the disputed determination is found. An objection that merely incorporates by reference or refers to the briefing before the magistrate judge is not specific. Failure to file specific written objections will bar the aggrieved party from appealing the factual findings and legal conclusions of the magistrate judge that are accepted or adopted by the district court, except upon grounds of plain error. _See Douglass v. United Servs. Automobile Ass'n_, 79 F.3d 1415, 1417 (5th Cir. 1996).

_(signature)_
IRMA CARRILLO RAMIREZ
UNITED STATES MAGISTRATE JUDGE

31