## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF TEXAS
## DALLAS DIVISION

| | | |
|---|---|---|
| GREGORY ALAN SCOTT | § | |
| d/b/a THE SCOTT LAW FIRM, | § | |
| **Plaintiff,** | § | |
| | § | |
| v. | § | Civil Action No. 3:20-CV-2825-M-BH |
| | § | |
| SCOTT D. WOLLNEY, | § | |
| JOSEPH R. SHGRUE, | § | |
| PAUL A ROMANO, and | § | |
| ATLAS FINANCIAL HOLDINGS, INC., | § | |
| **Defendants.** | § | Referred to U.S. Magistrate Judge[1] |

### FINDINGS, CONCLUSIONS, AND RECOMMENDATION

Before the Court for recommendation are *Defendant Atlas Financial Holdings, Inc.'s Motion to Dismiss Tort Claims Asserted Against It in Plaintiff's Fourth Amended Complaint*, filed June 23, 2021 (doc. 81), and *Plaintiff's Rule 54(d)(2)(A) Motion for Attorney Fees*, filed July 1, 2021 (doc. 93). Based on the relevant filings, evidence, and applicable law, the defendant's motion to dismiss should be **GRANTED**, the remaining claims against it should be **DISMISSED with prejudice**, and the plaintiff's motion for attorney's fees should be **DENIED**.

### I.  BACKGROUND

Gregory Alan Scott (Plaintiff), a Texas attorney, sues Atlas Financial Holdings, Inc. (Defendant) and its Chief Executive Officer (CEO), Chief Financial Officer (CFO), and Chief Operating Officer (COO) (collectively Corporate Officers), for his unpaid attorney fees and expenses. (doc. 73 at 9-21.)[2]

---

[1] By standing order of reference dated November 11, 2020 (doc. 28), this case has been referred for full case management.

[2] Citations to the record refer to the CM/ECF system page number at the top of each page rather than the page numbers at the bottom of each filing.

A.    **Factual Background**

Plaintiff alleges that between 2014 and 2020, Defendant provided commercial vehicle insurance in Texas through its insurance companies and subsidiaries, Gateway Insurance Company (GIC) and American Country Insurance Company (American Country). (*Id.* at 5.) In 2014, COO, Defendant's Vice President of Claims (VP), and its Litigation Manager met with Plaintiff in Dallas, Texas "to retain his legal services related to defending what was anticipated to be dozens of Texas lawsuits involving hundreds of Texas claimants." (*Id.* at 9.) At the meeting, COO entered into a "preliminary, verbal attorney-client agreement" with him for the benefit of Defendant at the direction of CEO. (*Id.*)

Between 2014 and 2020, Defendant's "highest corporate officers" retained his law firm "via email to provide legal services for new civil lawsuits filed in Texas." (*Id.*) Plaintiff represented GIC, or its policyholders and insureds, in 90 lawsuits filed in Texas, and he "performed 100% of the legal services requested by [Defendant] in every Texas lawsuit." (*Id.* at 10.) He received the "Atlas Financial Defense Billing Guidelines," which set out the policies and procedures for submission of invoices by counsel, and he submitted invoices in accordance with those billing guidelines. (*Id.* at 10-11.) He alleges that Defendant, "through its insurance companies/subsidiaries," paid his attorney fee bills between 2014 and 2019, but in late 2019, it "began slow-paying & non-payment of the remaining attorney fee statements." (*Id.* at 11-12.)

On June 11, 2020, GIC was declared insolvent and placed into liquidation by the Circuit Court of Cook County, Illinois. (*See* doc. 25-5.) The following day, the Office of the Special Deputy Receiver (the Receiver) issued a notice to GIC's defense counsel informing them of the state court's liquidation order, where they could obtain a copy of the order, as well as informing

them that their retention by GIC had concluded as of the date of the liquidation order. (*See* doc. 25-7 at 2.) The state court's liquidation order also "activated the statutory protection" of the state's Guaranty Fund or Association, which would determine whether the claim or claims being defended by the vendors were "covered claims" as defined by statute, and a representative from the Guaranty Fund would contact them to discuss their handling of the claims. (*See id.*) A separate email was sent to undisclosed recipients from a litigation analyst, advising them that the Receiver would address any unpaid expenses billed to GIC from October 16, 2019 through June 10, 2020. (*Id.* at 3.) Those seeking payment for unpaid expenses billed to GIC within that timeframe were directed to mail itemized invoices to the Receiver. (*Id.*) For unpaid expenses prior to October 16, 2019, a claim was to be filed in GIC's liquidation proceedings. (*Id.*)

## B.    **Procedural History**

On August 11, 2020, Plaintiff filed this lawsuit in the 160th Judicial District Court, in Dallas County, Texas, asserting claims for breach of contract and suit on sworn account. (*See* doc. 1-2.) After it was removed to federal court on September 11, 2020, and Defendant answered, Plaintiff filed a motion for partial summary judgment on October 19, 2020. (*See* docs. 1, 13, 15.) He subsequently amended his complaint, and was later granted leave to file a fourth amended complaint, which asserted claims against Defendant and Corporate Officers for breach of contract and suit on sworn account, as well as "common law" claims for theft of services, unjust enrichment, tortious interference with a contract, negligent and intentional misrepresentation, negligence, and fraudulent inducement, and sought $323,722 in attorney's fees and $9,318 in expenses. (docs. 36, 53, 72, 73 at 9-21, 25-26.) Prior to the filing of the fourth amended complaint, Defendant also filed a motion for summary judgment. (*See* doc. 57.) Plaintiff's claims against

3

Corporate Officers were dismissed without prejudice for lack of personal jurisdiction on July 6, 2021. (*See* docs. 72, 100, 101.) On August 28, 2021, it was recommended that Plaintiff's partial summary judgment motion be denied, Defendant's motion be granted, and the breach of contract and suit on sworn account claims be dismissed with prejudice. (*See* doc. 112.)

On June 23, 2021, Defendant moved to dismiss the remaining claims against it for failure to state a claim. (doc. 81.) On July 1, 2021, Plaintiff moved for attorney's fees. (doc. 93.) He responded to the motion to dismiss on July 12, 2021, and Defendant replied on July 28, 2021. (docs. 106, 111.) It did not respond the motion for fees.

## II.  DEFENDANT'S MOTION TO DISMISS

Defendant moves to dismiss Plaintiff's "common law" claims against it for failure to state a claim under Rule 12(b)(6). (doc. 82.)

### A.  <u>Rule 12(b)(6) Standard</u>

Rule 12(b)(6) allows motions to dismiss for failure to state a claim upon which relief can be granted. Fed. R. Civ. P. 12(b)(6). Under the 12(b)(6) standard, a court cannot look beyond the face of the pleadings. *Baker v. Putnal*, 75 F.3d 190, 196 (5th Cir. 1996); *see also Spivey v. Robertson*, 197 F.3d 772, 774 (5th Cir. 1999), *cert. denied*, 530 U.S. 1229 (2000).

Pleadings must show specific, well-pleaded facts, not mere conclusory allegations to avoid dismissal. *Guidry v. Bank of LaPlace*, 954 F.2d 278, 281 (5th Cir. 1992). The court must accept those well-pleaded facts as true and view them in the light most favorable to the plaintiff. *Baker*, 75 F.3d at 196. "[A] well-pleaded complaint may proceed even if it strikes a savvy judge that actual proof of [the alleged] facts is improbable, and 'that a recovery is very remote and unlikely.' " *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 556 (2007) (citation omitted). Nevertheless, a plaintiff

4

must provide "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action's elements will not do." *Id.* at 555; *accord Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (emphasizing that "the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions"). The alleged facts must "raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555. In short, a complaint fails to state a claim upon which relief may be granted when it fails to plead "enough facts to state a claim to relief that is plausible on its face." *Id.* at 570.

> A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw reasonable inference that the defendant is liable for the misconduct alleged. The plausibility standard is not akin to a "probability requirement," but it asks for more than a sheer possibility that a defendant has acted unlawfully. Where a complaint pleads facts that are "merely consistent with" a defendant's liability, it "stops short of the line between possibility and plausibility of 'entitlement to relief.'"

*Iqbal*, 556 U.S. at 678 (citations omitted). When plaintiffs "have not nudged their claims across the line from conceivable to plausible, their complaint must be dismissed." *Twombly*, 550 U.S. at 570; *accord Iqbal*, 556 U.S. at 683.

As noted, a court cannot look beyond the pleadings in deciding a Rule 12(b)(6) motion. *Spivey*, 197 F.3d at 774; *Baker*, 75 F.3d at 196. When a party presents "matters outside the pleadings," a court has "complete discretion" to either accept or exclude the evidence for purposes of determining the motion. *Isquith ex rel. Isquith v. Middle S. Utils., Inc.*, 847 F.2d 186, 193 n.3 (5th Cir. 1988); *accord Gen. Retail Servs., Inc. v. Wireless Toyz Franchise, LLC*, 255 F. App'x 775, 783 (5th Cir. 2007). However, "[i]f ... matters outside the pleadings are presented to and not excluded by the court, the motion must be treated as one for summary judgment under Rule 56," and "[a]ll parties must be given a reasonable opportunity to present all the material that is pertinent

to the motion." Fed. R. Civ. P. 12(d).

Nevertheless, "pleadings" for purposes of a motion to dismiss include attachments to the complaint. *See In re Katrina Canal Breaches Litig.*, 495 F.3d 191, 205 (5th Cir. 2007) (citation omitted). Similarly, documents "attache[d] to a motion to dismiss are considered part of the pleadings, if they are referred to in the plaintiff's complaint and are central to her claim[s]." *Collins v. Morgan Stanley Dean Witter*, 224 F.3d 496, 498-99 (5th Cir. 2000) (citation omitted). Accordingly, documents falling in these categories may be properly considered without converting the motion to dismiss into a motion for summary judgment. *See Norris v. Hearst Trust*, 500 F.3d 454, 461 n.9 (5th Cir. 2007).

Here, Plaintiff attaches to his fourth amended complaint copies of his invoices as well as his affidavit, which largely duplicate the allegations in his complaint. (*See* docs. 73 at 30-82; 73-1—73-4.) His fourth amended complaint also incorporates by reference the parties' summary judgment evidence. Defendant's motion to dismiss cites the same summary judgment evidence, as well as the court records from GIC's liquidation proceedings. Because the documents attached to Plaintiff's fourth amended complaint are considered part of the pleadings, and because his complaint and Defendant's motion cite documents that are part of the pleadings or subject to judicial notice, conversion of Defendant's motion to dismiss into a motion for summary judgment is unnecessary. *See In re Katrina Canal Breaches Litig.*, 495 F.3d at 205; *Norris*, 500 F.3d at 461 n.9.; *see also Wang v. Prudential Ins. Co. of America.*, 439 F. App'x 359, 363 (5th Cir. 2011) (holding that the district court "did not impermissibly consider documents outside of the record in deciding the motion to dismiss, as the documents referred to were public court filings"); Fed. R. Evid. 201(b)(2) (a court may take judicial notice of a fact when it "can be accurately and readily

determined from sources whose accuracy cannot reasonably be disputed").

**B.**    **Theft of Services**

Defendant moves for dismissal of Plaintiff's common law theft of services claim as non-existing under Texas law.[3]  (doc. 82 at 8.)

Plaintiff's fourth amended complaint alleges that Defendant is liable for "common law theft of services" because it is "attempting to misappropriate hundreds of thousands of dollars in legal services by deception and other unlawful means." (doc. 73 at 16.) He does not cite any legal authority that recognizes a theft of services claim under Texas common law, however, or that supports his argument that "[t]he common law has imposed *civil* liability for 'Theft' related misconduct for at least a thousand years." (doc. 107 at 8 (emphasis original).) Although his response references the Texas Theft Liability Act, Tex. Prac. & Rem. Code §§ 134.001-.005 (TTLA), and Texas Penal Code § 31.03 in support of his theft of services claim, his fourth amended complaint does not cite either of those statutes as bases for his claim, and it does not assert a claim under the TTLA. *See Watkins v. Cornell Companies, Inc.*, No. 3:11-CV-260-M-BN, 2013 WL 1914713, at *4 (N.D. Tex. Mar. 15, 2013), *adopted by* 2013 WL 1926375 (N.D. Tex. May 8, 2013) (explaining that the statutes cited in plaintiffs' response did not need to be addressed because they

---

3 "It is a long-recognized principle that federal courts sitting in diversity cases 'apply state substantive law and federal procedural law.'" *Shady Grove Orthopedic Assoc., P.A., v. Allstate Ins. Co.*, 559 U.S. 393, 417 (2010) (quoting *Hanna v. Plumer*, 380 U.S. 460, 465 (1965)). Here, this dispute concerns a contractual agreement made in Texas, involving legal services rendered in the state of Texas. *See De Aguilar v. Boeing Co.*, 47 F.3d 1404, 1413 (5th Cir. 1995) (quoting *Duncan v. Cessna Aircraft Co.*, 665 S.W.2d 414, 421 (Tex. 1984)) ("[T]he law of the state with the most significant relationship to the particular substantive issue will be applied to resolve that issue."); *see also Faloona by Fredickson v. Hustler Magazine, Inc.*, 799 F.2d 1000, 1003 (5th Cir. 1986) (citing *Duncan*, 665 S.W.2d at 421) (contacts to take into account in determining the applicable law include the place of contracting and place of performance). Further, the parties appear to agree that Texas law governs the breach of contract claims, as they cite to Texas law and Fifth Circuit cases applying Texas law. (*See* docs. 82, 107.); *see also CIMC Vehicles Grp. Co. v. Direct Trailer, LP*, No. CIV.A. H-10-709, 2012 WL 4017985, at *9 (S.D. Tex. Aug. 24, 2012), *adopted by* 2012 WL 4018200 (S.D. Tex. Sept. 12, 2012) ("By uniformly relying on Texas law, the parties agree that it applies to their controversy. Absent any indication in the record that any other law should apply, the court applies Texas law.").

"failed to allege negligence per se under these statutes in their Original Petition"). In fact, his fourth amended complaint explicitly identifies his theft of services claim as a common law cause of action. (doc. 73 at 16.)

To the extent that Plaintiff attempts to assert a new claim under the TTLA in his response, it is not part of the pleadings to be considered for purposes of the motion to dismiss. As a general rule, "[a] claim which is not raised in the complaint, but, rather is raised only in response to a motion for summary judgment is not properly before the court." *Cutrera v. Bd. of Sup.'rs of La. State Univ.*, 429 F.3d 108, 113 (5th Cir. 2005). This is because a properly pleaded complaint must give fair notice of what the claim is and the grounds upon which it is based. *DeFrancheschi v. BAC Home Loans Servicing, L.P.*, 477 F. App'x 200, 204 (5th Cir. 2012). "Accordingly, a district court considering a defendant's motion for summary judgment does not err by disregarding a theory of liability asserted in the plaintiff's response that was not pleaded as required by the applicable pleading standard." *Hoffman v. L & M Arts*, 838 F.3d 568, 576 (5th Cir. 2016) (citing *id.*). Courts also follow this general rule when considering new claims and theories asserted in responses to motions to dismiss. *See Guzman v. Nationstar Mortg. LLC*, No. 4:17-CV-00823-O-BP, 2017 WL 6597959, at *2 (N.D. Tex. Dec. 8, 2017), *adopted by* 2017 WL 6594199 (N.D. Tex. Dec. 26, 2017) (dismissing plaintiff's claim after refusing to consider a factual assertion that was first raised in his response to the motion to dismiss); *Middleton v. Life Ins. Co. of North America*, H-09-CV-3270, 2010 WL 582552, *5 (S.D. Tex. Feb. 12, 2010) (finding claim raised for first time in response to motion to dismiss was not properly before the Court); *see also Renfrow v. CTX Mortg. Co.*, LLC, No. 3:11-CV-3132-L, 2012 WL 3582752, at *4 (N.D. Tex. Aug. 20, 2012) (explaining that "[a]llegations outside of the Petition may not be considered by the court" in

8

determining a Rule 12(b)(6) motion). Plaintiff has not sought or been granted leave to amend his fourth amended complaint to add a TTLA claim, and he has not shown that Defendant consented to an amendment. *See* Fed. R. Civ. P. 15(a)(2).

Because Plaintiff is unable to demonstrate that a common law theft of services claim exists in Texas, this claim should be dismissed with prejudice.

## C.    <u>Unjust Enrichment</u>

Defendant argues that Plaintiff's unjust enrichment claim fails to state a claim upon which relief may be granted because he seeks to recover payments that are covered under an express contract. (doc. 82 at 8-10.)

Both the Texas Supreme Court and the Fifth Circuit have recognized claims for unjust enrichment as independent causes of action. *See, e.g., Sullivan v. Leor Energy*, LLC, 600 F.3d 542, 550 (5th Cir. 2010); *Elledge v. Friberg–Cooper Water Supply Corp.*, 240 S.W.3d 869, 870 (Tex. 2007); *Pepi Corp. v. Galliford*, 254 S.W.3d 457, 460 (Tex. App.–Houston [1st Dist.] 2007, pet. denied) ("Unjust enrichment is an independent cause of action.") (citation omitted). A plaintiff may recover for unjust enrichment if the defendant "has obtained a benefit from [him] by fraud, duress, or the taking of an undue advantage." *Heldenfels Bros. v. City of Corpus Christi*, 832 S.W.2d 39, 41 (Tex. 1992). In essence, an unjust enrichment claim "characterize[s] the result of the [defendant's] failure to make restitution of benefits under such circumstances as to give rise to an implied or quasi-contract to repay." *Coleman v. Bank of New York Mellon*, No. 3:12-CV-04783-M-BH, 2013 WL 4761111, at *14 (N.D. Tex. Sept. 4, 2013) (citations omitted) (alterations in *Coleman*). Nevertheless, "there can be no recovery for unjust enrichment under a quasi-contract or contract implied-in-law theory when a valid, express contract covers the subject matter of the

parties' dispute." *Merryman v. JPMorgan Chase*, No. 3:12-CV-2156-M-BH, 2013 WL 497883, at *6 (N.D. Tex. Jan. 16, 2013) (citation omitted). "This rule is applicable not only when the plaintiff is seeking to recover in equity from the party with whom he expressly contracted, but also when the plaintiff is seeking recovery from a third party foreign to the original contract but who is alleged to have benefited from its performance." *Protocol Techs., Inc. v. J.B. Grand Canyon Dairy, L.P.*, 406 S.W.3d 609, 614 (Tex. App.—Eastland 2013, no pet.).

Plaintiff's fourth amended complaint alternatively asserts an unjust enrichment claim "based on an implied agreement to pay for services received" by Defendant. (doc. 73 at 17.) Both parties agree that Plaintiff's legal services is expressly governed by a contractual agreement, however, although Defendant contends it is not a party to that agreement. *See TIB--The Indep. BankersBank v. Canyon Cmty. Bank*, 13 F. Supp. 3d 661, 672 (N.D. Tex. 2014) (citation omitted) ("A party can plead legal and equitable claims in the alternative, but only when one party disputes the existence of a contract governing the dispute."). Because neither Plaintiff nor Defendant disputes the existence of a contract that governs the legal services provided by Plaintiff to the insurers, Plaintiff cannot state an alternative claim under Texas law for unjust enrichment. *See Protocol Techs., Inc.*, 406 S.W.3d at 614; *see also ConocoPhillips Co. v. Koopmann*, 542 S.W.3d 643, 664 (Tex. App.—Corpus Christi 2016), aff'd on other grounds 547 S.W.3d 858 (Tex. 2018) (holding that because subsidiary's lease covered the subject matter of the dispute, plaintiff's unjust enrichment claim against subsidiary's parent company failed as a matter of law); *Humana, Inc. v. Shrader & Assocs., LLP*, 584 B.R. 658, 686 (S.D. Tex. 2018) ("Because the Plaintiffs' claims for unjust enrichment/money had and received all hinge on whether the plaintiffs are entitled to reimbursement under the terms of a health benefits plan, the court concludes that these claims are

10

all subject to dismissal because express contracts cover the subject matter of these disputes."). Accordingly, the unjust enrichment claim should be dismissed.

**D.**     **Tortious Interference with Contract**

Defendant argues that Plaintiff's tortious interference with contract claim fails as a matter of law because it cannot be liable for interfering with its own contract. (doc. 82 at 10.)

A plaintiff alleging interference with an existing contract under Texas law must prove (1) that a contract subject to interference existed; (2) that the alleged act of interference was willful and intentional; (3) that the willful and intentional act proximately caused damage; and (4) that actual damage or loss occurred. *Amigo Broad., LP v. Spanish Broad. Sys., Inc.*, 521 F.3d 472, 489 (5th Cir. 2008) (citing *ACS Investors, Inc. v. McLaughlin*, 943 S.W.2d 426, 430 (Tex. 1997)). A plaintiff must also allege that "the defendant[s] took an active part in persuading a party to a contract to breach [the contract]." *Davis v. HydPro, Inc.*, 839 S.W.2d 137, 139 (Tex. App.—Eastland 1992, writ denied) (quoting *Texaco, Inc. v. Pennzoil Co.*, 729 S.W.2d 768, 803 (Tex. App.—Houston [1st Dist.] 1987, writ ref'd n.r.e.), cert. dism'd, 485 U.S. 994 (1988)). "Although the law imposes a general obligation not to interfere with existing contracts, it does not extend the obligation to a person who is a party to the contract based on the premise that 'a party cannot tortiously interfere with its own contract.'" *Guardian Life Ins. Co. v. Kinder*, 663 F. Supp. 2d 544, 557 (S.D. Tex. 2009) (citing *Holloway v. Skinner*, 898 S.W.2d 793, 796 (Tex. 1995)); *see Hussong v. Schwan's Sales Enterprises, Inc.*, 896 S.W.2d 320, 326 (Tex. App.—Houston [1st Dist.] 1995, no writ) ("It is well settled that one cannot tortiously interfere with one's own contract."); *Wilkerson v. Univ. of N. Texas By & Through Bd. of Regents*, 878 F.3d 147, 161 (5th Cir. 2017) (same).

Here, Plaintiff's fourth amended complaint alleges that "[a]n attorney-client contractual relationship existed between the Plaintiff and 'Atlas Financial' and was subject to interference by the corporate officer Defendants" when they refused to order the payment of his attorney fees. (doc. 73 at 17.) Although Plaintiff alleges that Corporate Officers were acting on behalf of Defendant when they allegedly tortiously interfered with the attorney-client contract between him and Defendant, "a contracting party's agent or employee acting in the party's interests cannot interfere with the party's contract." *Morgan Stanley & Co., Inc. v. Texas Oil Co.*, 958 S.W.2d 178, 180 (Tex. 1997); *see also Holloway*, 898 S.W.2d at 795 ("As a general rule, the actions of a corporate agent on behalf of the corporation are deemed the corporation's acts."). As discussed, "a person must be a stranger to a contract to tortiously interfere with it." *In re Vesta Ins. Grp., Inc.*, 192 S.W.3d 759, 761 (Tex. 2006) (quoting *Morgan Stanley*, 958 S.W.2d at 179).

Plaintiff argues that because Defendant does not dispute the existence of express contracts between him and GIC and American Country for his legal services, he is entitled to argue that Defendant tortiously interfered with those contracts. (doc. 107 at 12.) Contrary to his assertion that he "properly pled that contention in his 4th Amended Complaint," there are no allegations that Defendant interfered with his contracts with the insurers. (*Id.*) The only contract alleged to be interfered with by Defendant in the fourth amended complaint is the attorney-client agreement between him and Defendant. Because "the Court generally only relies on the allegations made in the pleadings, and does not base its decision on allegations raised for the first time in the motion to dismiss or the plaintiff's response," any new allegations concerning tortious inference with the contracts between Plaintiff and the insurers are not considered. *Hearn v. Deutsche Bank Nat. Tr. Co.*, No. 3:13-CV-2417-B, 2014 WL 4055473, at *4 n.3 (N.D. Tex. Aug. 15, 2014); *see Affinity*

*Labs of Tex., LLC v. Toyota Motor N. Am.*, W:13-CV-365, 2014 WL 2892285, at *4 (W.D. Tex. May 12, 2014) (citing *Cutrera*, 429 F.3d at 113) (disregarding new allegations that attempted to clarify an essential element of a claim because those facts were brought up for the first time in plaintiff's response to the motion to dismiss and "were not explicitly alleged in the actual complaint").

Because Plaintiff has not sufficiently alleged the necessary elements for a tortious interference with a contract claim, he has failed to nudge his claim across the line from conceivable to plausible, and his claim should be dismissed. *See Twombly*, 550 U.S. at 555; *see, e.g., Copeland v. Minton*, No. 3:16-CV-726-L, 2016 WL 7971584, at *6 (N.D. Tex. Dec. 29, 2016) (dismissing tortious interference with contract claim for failure to state a claim).

**E.  Negligent Misrepresentation, Intentional Misrepresentation, and Fraudulent Inducement**

Defendant argues that Plaintiff's allegations in support of his claims for negligent misrepresentation, intentional misrepresentation, and fraudulent inducement fail to meet the heightened pleading requirements under Rule 9(b) and are contradicted by the public record and the record in this case. (doc. 82 at 11-16.)

In Texas, the elements of fraud by misrepresentation are: (1) the defendant made a representation to the plaintiff; (2) the representation was material; (3) the representation was false; (4) when the defendant made the representation, the defendant knew it was false or made the representation recklessly and without knowledge of its truth; (5) the defendant made the representation with the intent that the plaintiff act on it; (6) the plaintiff relied on the representation; and (7) the representation caused the plaintiff injury. *Shandong Yinguang Chem. Indus. Joint Stock Co., Ltd. v. Potter*, 607 F.3d 1029, 1032-33 (5th Cir. 2010)).

"Fraudulent inducement is a distinct category of common-law fraud that shares the same elements but involves a promise of future performance made with no intention of performing at the time it was made." *Ibe v. Jones*, 836 F.3d 516, 525 (5th Cir. 2016) (quoting *Zorrilla v. Aypco Constr. II, LLC*, 469 S.W.3d 143, 153 (Tex. 2015)). To state a claim for fraudulent inducement under Texas law, a plaintiff must prove the basic elements of fraud as well as an underlying contract which was induced. *Kevin M. Ehringer Enters., Inc. v. McData*, 646 F.3d 321, 325 (5th Cir. 2011) (citing *Formosa Plastics Corp. USA v. Presidio Eng'rs & Contractors, Inc.*, 960 S.W.2d 41, 47 (Tex. 1998); *Haase v. Glazner*, 62 S.W.3d 795, 798 (Tex. 2001)).

A claim for negligent misrepresentation under Texas law consists of four elements: (1) the defendant made a representation in the course of his business, or in a transaction in which he has a pecuniary interest; (2) the defendant supplied false information for the guidance of others in their business; (3) the defendant did not exercise reasonable care or competence in obtaining or communicating the information; and (4) the plaintiff suffered pecuniary loss by justifiably relying on the representation. *Gen. Elec. Capital Corp. v. Posey*, 415 F.3d 391, 395-96 (5th Cir. 2005). "The false information complained of in a negligent misrepresentation claim must be a misstatement of an existing fact rather than a promise of future conduct." *DeFranceschi v. Wells Fargo Bank, N.A.*, 837 F. Supp. 2d 616, 625-26 (N.D. Tex. 2011) (internal citation omitted).

Claims for fraud and fraudulent inducement are both subject to the heightened pleading requirement of Rule 9(b). *See Potter*, 607 F.3d at 1032. Rule 9(b) also applies to negligent misrepresentation claims when "the inadequate fraud claim is so intertwined with the negligent misrepresentation claim that it is not possible to describe a simple redaction that removes the fraud claim while leaving behind a viable negligent misrepresentation claim." *Am. Realty Tr., Inc. v.*

14

*Travelers Cas. & Sur. Co. of Am.*, 362 F. Supp.2d 744, 752 (N.D. Tex. 2005); *see Benchmark Elecs., Inc. v. J.M. Huber Corp.*, 343 F.3d 719, 723 (5th Cir. 2003) ("Although Rule 9(b) by its terms does not apply to negligent misrepresentation claims, this court has applied the heightened pleading requirements when the parties have not urged a separate focus on the negligent misrepresentation claims."). This is because Rule 9(b) applies "to all averments of fraud, whether they are part of a claim of fraud or not." *Lonestar Ladies Inv. Club v. Schlotzsky's Inc.*, 238 F.3d 363, 368 (5th Cir. 2001).

Plaintiff's fourth amended complaint combines the allegations in support of his common law claims for "negligent misrepresentation" and "intentional misrepresentation," and his fraudulent inducement claim is also based on the same operative facts. (*See* doc. 73 at 18-21.) Because his negligent misrepresentation claim is grounded in fraud, it is subject to the heightened pleading standards under Rule 9(b). *See Benchmark Elecs., Inc.*, 343 F.3d at 723 (evaluating negligent misrepresentation in the same manner as fraud in part because both were "based on the same set of alleged facts"); *see, e.g., Am. Realty Tr., Inc.*, 362 F. Supp.2d at 752-53 (concluding that Rule 9(b) applies to the negligent misrepresentation claim because "[t]he petition combines allegations of fraud and negligence into a single 'First Cause of Action' (and indeed into the same two paragraphs) and alleges reckless misrepresentation without specifically indicating which claim(s) this allegation is intended to support"); *Sivertson v. Citibank, N.A. as Tr. for Registered Holders of WAMU Asset-Back Certificates WAMU Series No. 2007-HE2 Tr.*, 390 F. Supp. 3d 769, 789 (E.D. Tex. 2019) ("Plaintiff's common law fraud claim and negligent misrepresentation claim are virtually identical stated in Plaintiff's pleading [ ]; as such, Rule 9(b)'s pleading standards are applicable."); *JPA, Inc. v. USF Processors Trading Corp, Inc.*, No. 3:05-CV-0433-P, 2005 WL

8158446, at *3 (N.D. Tex. July 15, 2005) ("Because Carolina Logistics' negligent misrepresentation claim 'sounds in fraud,' the stringent pleading requirements of Rule 9(b) apply.").

A dismissal for failure to plead fraud with particularity pursuant to Rule 9(b) is treated the same as a Rule 12(b)(6) dismissal for failure to state a claim. *McCall v. Genentech, Inc.*, No. 3:10-CV-1747-B, 2011 WL 2312280, at *3 (N.D. Tex. June 9, 2011) (citing *Lovelace v. Software Spectrum Inc.*, 78 F.3d 1015, 1017 (5th Cir. 1996)). Rule 9(b) requires a plaintiff to plead the circumstances constituting fraud with particularity. *See* Fed. R. Civ. P. 9(b); *City of Clinton, Ark. v. Pilgrim's Pride Corp.*, 632 F.3d 148, 153 (5th Cir. 2010); *see also Potter*, 607 F.3d at 1032. "[A]rticulating the elements of fraud with particularity requires a plaintiff to specify the statements contended to be fraudulent, identify the speaker, state when and where the statements were made, and explain why the statements were fraudulent." *Williams v. WMX Techs.*, 112 F.3d 175, 177 (5th Cir. 1997). Further, "general allegations, which lump all defendants together failing to segregate the alleged wrongdoing of one from those of another cannot meet the requirements of Rule 9(b)." *Patel v. Holiday Hospitality Franchising, Inc.*, 172 F. Supp. 2d 821, 824 (N.D. Tex. 2001) (quoting *In re Urcarco Sec. Lit.*, 148 F.R.D. 561, 569 (N.D. Tex. 1993), *aff'd sub nom. Melder v. Morris*, 27 F.3d 1097 (5th Cir. 1994)). "Put simply, Rule 9(b) requires 'the who, what, when, where, and how' to be laid out" with respect to a fraud claim. *Benchmark Elecs., Inc.*, 343 F.3d at 724 (internal quotations omitted).

Here, Plaintiff alleges that between 2014 and 2020, Defendant and Corporate Officers "repeatedly represented in writing & verbally to [him] that his attorney fees would be promptly paid," that they "knew the sale of 'Atlas' subsidiaries was imminent and knew that they would

not pay [his] attorney fees," and that they "continued to hire [him] for new lawsuits filed in Texas in 2019 & 2020." (doc. 73 at 18.) He also alleges that he "had no idea that the Defendants intended to cheat him out of hundreds of thousands of dollars until July of 2020," and that he "would not have spent countless hours providing legal services had he known that the Defendants had no intention of paying his attorney fees in pending/on-going Texas lawsuits." (*Id.* at 18-19.)

While the fourth amended complaint appears to nominally lay out the necessary elements of a fraud claim in Texas, it fails to plead the circumstances with particularity because it does not include the specific "who, what, when, where, and how" as required under Rule 9(b). *See Benchmark Elecs., Inc.*, 343 F.3d at 724. The fourth amended complaint vaguely alleges that Defendant and Corporate Officers "repeatedly represented" that "his attorney fees would be promptly paid" without any particularity as to who made the specific misrepresentations. (*See* doc. 18 at 18, 20.) Allegations that "lump all defendants together, failing to segregate the alleged wrongdoing of one from those of another," do not satisfy the requirements of Rule 9(b). *USA ex rel. Barrett v. Johnson Controls, Inc.*, No. 3:01-CV-1641-M, 2003 WL 21500400, at *10 (N.D. Tex. Apr. 9, 2003); *see In re Urcarco Sec. Litig.*, 148 F.R.D. at 569 (finding that the plaintiff's "lumping together" of the "thirteen named defendants, three of which are supposed to represent a defendant class of fifty firms" simply as "defendants" failed to "segregate the alleged wrongdoing of one from those of another do not meet the requirements of Rule 9(b)").

Although the fourth amended complaint alleges that the defendants made repeated written and verbal representations that his attorney fees would be paid between 2014 and 2020, it does not provide any details about those representations. (*See* doc. 18 at 18, 20.) Notably, Plaintiff's pleadings include hundreds of pages of email correspondence and other documents, but he fails to

17

identify any written representation upon which he relied. Moreover, his complaint does not identify any date as to "when" the alleged misrepresentations were made to him, other than the six year period between 2014 and 2020, when he was providing his legal services. This broad time frame fails to provide fair notice of when the false representations were made. *See U.S. ex rel. King*, 232 F.R.D. at 570-72 (dismissing fraud claim under Rule 9(b) because plaintiff "fail[ed] to identify a single specific date on which a false claim was made and, instead, claims that the fraudulent activity occurred on or before January 1, 1998, to present"); *Siragusa v. Arnold*, No. 3:12-CV-4497-M, 2014 WL 3512988, at *5 (N.D. Tex. July 16, 2014) (dismissing fraud and fraudulent inducement claims under Rule 9(b) because of plaintiff's failure to allege when or where misleading statements were made).

Plaintiff argues that in mid-2020, Defendant's representatives and corporate officers encouraged him to "hire testifying medical experts, subpoena medical records, take depositions, etc.," telling him "[j]ust pay these vendor invoices out of your pocket, then add these invoices to your attorney fee statements & we'll reimburse you right away," but they "knew that they had no intention of ever paying any vendor invoices after mid-2020." (doc. 107 at 14.) While also asserted in the damages section of his fourth amended complaint, (*see* doc. 73 at 27), this vague and conclusory allegation fails to sufficiently explain how such a statement constitutes a misrepresentation, as it is unclear on who will be reimbursing him for those fees, or why it was false at the time made. *See Dorsey v. Portfolio Equities, Inc.*, 540 F.3d 333, 339 (5th Cir. 2008) ("[S]imple allegations that defendants possess fraudulent intent will not satisfy Rule 9(b) ... The plaintiffs must set forth *specific facts* supporting an inference of fraud[,] ... such as identify[ing] circumstances that indicate conscious behavior on the part of the defendant.") (citations omitted)

18

(emphasis in original). The record also contradicts his contention that Defendant knew that his attorney fees and expenses would not be paid. As discussed, GIC is insolvent and all claims for unpaid bills and expenses are to be submitted to the Receiver for possible reimbursement. (*See* docs. 25-5, 25-7.) While Plaintiff's attorney fees and expenses have not been paid as a result of GIC's insolvency, "the mere failure to perform a contract is not evidence of fraud." *Formosa Plastics Corp. USA*, 960 S.W.2d at 48.

Because Plaintiff has failed to meet the heightened pleading requirement of Rule 9(b), his negligent misrepresentation, intentional misrepresentation, and fraudulent inducement claims should be dismissed for failure to state a claim.

**F.    Negligence**

Defendant argues that Plaintiff's negligence cause of action fails to state a claim upon which relief can be granted because it does not owe him a legal duty. (doc. 82 at 16-17.)

The elements of a negligence cause of action in Texas are: (1) the existence of a legal duty; (2) a breach of that duty; and (3) damages proximately caused by that breach. *Boudreaux v. Swift Transp. Co., Inc.*, 402 F.3d 536, 540-41 (5th Cir. 2005) (citing *IHS Cedars Treatment Ctr. of Desoto, Tex., Inc. v. Mason*, 143 S.W.3d 794, 798 (Tex. 2004)). "The plaintiff must establish both the existence and the violation of a duty owed to the plaintiff by the defendant to establish liability in tort." *Greater Hous. Transp. Co. v. Phillips*, 801 S.W.2d 523, 525 (Tex. 1990). A legal duty is a general obligation imposed by law "apart from and independent of promises made and ... the manifested intentions of the parties, to avoid injury to others." *Southwestern Bell Tel. Co. v. DeLanney*, 809 S.W.2d 493, 496 (Tex. 1991). To establish a legal duty between contracting parties, the plaintiff must generally "show there is a special relationship between [them]." *Lowe v.*

19

*ViewPoint Bank*, No. 3:12-CV-1725-G-BH, 2013 WL 5273122, at *10 (N.D. Tex. Sept. 18, 2013) (citation omitted). "Whether a legal duty exists is a threshold question of law in a negligence action, and is to be determined based on the facts surrounding the occurrence in question." *Boudreaux*, 402 F.3d at 541 (citing *Thapar v. Zezulka*, 994 S.W.2d 635, 637 (Tex. 1999)).

Here, Plaintiff's fourth amended complaint alleges that Corporate Officers were charged with the duty to pay his attorney fee bills under "the six-year attorney-client contractual relationship," "the 'Pooling Agreement' between the subsidiaries," and "the written 'Atlas Financial Defense Billing Guidelines.'" (doc. 73 at 19-20.) It alleges that Corporate Officers "negligently failed to order payment of [his] attorney fees and same was a proximate cause of 'economic damages' & 'non-economic damages.'" (*Id.*)

The fourth amended complaint fails to state a negligence claim as a matter of law because there are no allegations that Defendant owed him a legal duty outside of any contractual obligations. As explained, to state a claim for negligence, the plaintiff must show that the defendant breached a duty arising "independent of the fact that a contract exists between the parties." *See DeLanney*, 809 S.W.2d at 494. "A duty arises independent of a contract when the duty is imposed by law rather than by the contract." *Sergeant Oil & Gas Co. v. Nat'l Maint. & Repair, Inc.*, 861 F. Supp. 1351, 1359 (S.D. Tex. 1994) (citing *id.*). "If a party must rely on the duties created in the contract, or if the negligence claim alleges the breach of the very duties encompassed in a contract, the action is in substance an action on the contract." *UMLIC VP LLC v. T & M Sales & Envtl. Sys., Inc.*, 176 S.W.3d 595, 613 (Tex. App.—Corpus Christi 2005, pet. denied). "[I]n order for a tort duty to arise out of a contractual duty, i.e., negligent failure to perform a contract, the liability must arise independent of the fact that a contract exists between the parties; the defendant must breach

20

a duty imposed by law rather than by the contract." *Sgroe v. Wells Fargo Bank, N.A.*, 941 F. Supp. 2d 731, 750 (E.D. Tex. 2013) (citing *DeLanney*, 809 S.W.2d at 494).

Plaintiff argues that because Defendant hired him 90 times, it had "the common law duty to promptly pay [his] attorney fees," but he does not provide any legal authority in support of this contention. (doc. 107 at 17.) He also argues that Defendant "had the common law duty to pay [his] attorney fees pursuant to the written 'Atlas Financial Defense Billing Guidelines," but he fails to point to any provision expressly stating that Defendant had a duty to pay for his attorney fees. (*Id.*) Plaintiff's claim that Defendant was to promptly pay his attorney fees for hiring him 90 times does not represent one of the general legal duties owed by one person to another; it arises from the alleged contractual obligations between the parties. *See, e.g., Sergeant Oil & Gas Co.*, 861 F. Supp. at 1359 (finding that plaintiff's negligence claim failed as a matter of law because defendants' alleged duty to reimburse plaintiff for damages arose from the parties' agreement and not from any duty recognized at common law); *Reveille Trucking, Inc. v. Lear Corp.*, No. 4:14-CV-511, 2017 WL 661521, at *15 (S.D. Tex. Feb. 17, 2017) ("Any duty to ensure compensation arises from the alleged contractual relationship; if Lear has a duty to pay Reveille for its services, that duty is imposed by the bills of lading. It is not a separate duty that Lear would bear, regardless of any contractual agreement.").

Because any duty to pay attorney fees does not exist independent of a contractual relationship, Plaintiff's negligence claim fails as a matter of law and should be dismissed. *See Wilson v. Wells Fargo Bank, Nat. Ass'n*, No. 3:13-CV-2257-O, 2014 WL 815352, at *11 (N.D. Tex. Mar. 3, 2014) (dismissing negligence claim because the plaintiff failed to specify the legal duty that the defendant owed him); *see, e.g., Dillard v. Mortg. Elec. Registration Sys.*, No. 3:10-

CV-0091-N, 2010 WL 11618071, at *3 (N.D. Tex. Apr. 16, 2010) ("Here, the Dillards' negligence claim fails because the duties at issue arise from the underlying contract between the Dillards and U.S. Bank. Accordingly, the Court dismisses the Dillards' negligence claims.").

### III.   PLAINTIFF'S MOTION FOR ATTORNEY'S FEES

Plaintiff moves for a post-judgment award of his attorney's fees and costs under Federal Rule of Civil Procedure 54(d) and Texas law. (doc. 93.)

As discussed, "federal courts sitting in diversity cases, 'apply state substantive law and federal procedural law.'" *Shady Grove Orthopedic Assoc., P.A.*, 559 U.S. at 417 (quoting *Hanna*, 380 U.S. at 465). State substantive law governs awards of attorneys' fees. *Chevron USA, Inc. v. Aker Maritime Inc.*, 689 F.3d 497, 505 (5th Cir. 2012) (quoting *Mathis v. Exxon Corp.*, 302 F.3d 448, 461 (5th Cir. 2002)). Federal procedure, however, requires that claims for attorneys' fees generally be made by motion filed within 14 days of the entry of judgment pursuant to Fed. R. Civ. P. 54(d)(2). *United Indus., Inc. v. Simon-Hartley, Ltd.*, 91 F.3d 762, 766 (5th Cir. 1996); *see also Evanston Ins. Co. v. Graves*, 3:13-CV-959-D, 2013 WL 4505181, *1 (N.D. Tex. Aug. 23, 2013) ("Rule 54(d) does not create a substantive right to attorney's fees. It is a procedural rule that provides that a claim for attorney's fees and related nontaxable expenses is to be made by motion..."); *CSMG Technologies, Inc. v. Allison*, No. 4:07-CV-0715, 2009 WL 2242351, *3 n. 20 (S.D. Tex. July 24, 2009) (noting that party seeking attorney's fees under Texas law in a diversity case must still follow federal procedural rules). The party seeking fees has the burden to "specify the judgment and the statute, rule, or other grounds" that entitles it to the award. See Fed. R. Civ. P. 54(d)(2)(B)(ii).

Under Texas law, a party may recover attorneys' fees only when allowed by statute or

contract. *1/2 Price Checks Cashed v. United Auto. Ins. Co.*, 344 S.W.3d 378, 382 (Tex. 2011) (citing *Akin, Gump, Strauss, Hauer & Feld, L.L.P. v. Nat'l Dev. & Research Corp.*, 299 S.W.3d 106, 120 (Tex. 2009)); *Tony Gullo Motors I, L.P. v. Chapa*, 212 S.W.3d 299, 310-11 (Tex. 2006). Chapter 38 of the Texas Civil Practice and Remedies Code allows recovery of attorney's fees in a breach of contract suit. *See* Tex. Civ. Prac. & Rem. Code Ann. § 38.001(8). To recover such fees, a party must (1) prevail on the breach of contract claim, and (2) recover damages. *MBM Fin. Corp. v. Woodlands Operating Co.*, 292 S.W.3d 660, 666 (Tex. 2009). "Federal Rule of Civil Procedure 54(d) gives courts the discretion to award costs to *prevailing parties*." *Taniguchi v. Kan Pacific Saipan, Ltd.*, 132 S. Ct. 1997, 2001 (2012) (emphasis).

Because Plaintiff has not prevailed on any cause of action against Defendant, he is not entitled to any attorney's fees or costs. *See Sgroe*, 941 F. Supp. 2d at 753 ("Because Plaintiff has no viable causes of action and is not entitled damages of any kind, he cannot recover attorneys' fees."). Accordingly, his motion for attorney's fees should be denied.

## IV.   RECOMMENDATION

Defendant's motion to dismiss for failure to state a claim should be **GRANTED**, Plaintiff's motion for attorney's fees should be **DENIED**, and all of the claims against Defendant should be **DISMISSED with prejudice.**

**SO RECOMMENDED** on this 10th day of September, 2021.

IRMA CARRILLO RAMIREZ
UNITED STATES MAGISTRATE JUDGE

## INSTRUCTIONS FOR SERVICE AND
## <u>NOTICE OF RIGHT TO APPEAL/OBJECT</u>

A copy of these findings, conclusions and recommendation shall be served on all parties in the manner provided by law. Any party who objects to any part of these findings, conclusions and recommendation must file specific written objections within 14 days after being served with a copy *See* 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b). In order to be specific, an objection must identify the specific finding or recommendation to which objection is made, state the basis for the objection, and specify the place in the magistrate judge's findings, conclusions and recommendation where the disputed determination is found. An objection that merely incorporates by reference or refers to the briefing before the magistrate judge is not specific. Failure to file specific written objections will bar the aggrieved party from appealing the factual findings and legal conclusions of the magistrate judge that are accepted or adopted by the district court, except upon grounds of plain error. *See Douglass v. United Servs. Automobile Ass'n*, 79 F.3d 1415, 1417 (5th Cir. 1996).

IRMA CARRILLO RAMIREZ
UNITED STATES MAGISTRATE JUDGE

24